UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASZELL REEDER,

                                    Plaintiff,

                                                              9:16-CV-01129
v.

                                                              (GTS/TWD)
E. ROBINSON, et al.,


                                    Defendants.
_____

APPEARANCES:                            OF COUNSEL:

RASZELL REEDER
Plaintiff pro se
94-A-6388
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN              BRIAN W. MATULA, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

*Pro se* Plaintiff Raszell Reeder initially commenced this 42 U.S.C. § 1983 civil rights

action against more than seventy Defendants.  (Dkt. No. 1.)  His complaint alleges, *inter alia*,

denial of adequate medical care by medical care personnel in the Department of Corrections and

Community Supervision ("DOCCS") facilities in which he has been housed for more than two

decades. *Id.*

Plaintiff's action was *sua sponte* dismissed against thirty-seven of the named Defendants on initial review under 28 U.S.C. §§ 1915(e) and 1915A. (Dkt. No. 4.)  The sole claims remaining after initial review are: (1) Eighth Amendment medical indifference claims involving actions which occurred prior to September 6, 2013, and were allegedly fraudulently concealed from Plaintiff against Defendants Registered Nurse ("RN")  E. Robinson Young, Nurse Administrator ("NA") E. Wheldon, Dr. William Vertoske, Dr. G. Rigaud, Nurse Practitioner ("NP") Paul Daughtery, RN M. Blauvell, RN V. Riveria, RN E. Liverson, RN C. Lymmerman, RN Z. Blunton, NA A. Jonathan, Dr. Ryan, Dr. Valencia, Dr. Anthony Corty Ann, RN Mike Sedar, Nurse Silvia Koole, Dr. Choo, RN Bunchy, Dr. Costillo, Dr. Herryman, Dr. Ware, Dr. Punzal, Dr. Deposio, Dr. Qayyam (Wende Correctional Facility), NA McNeally, RN E. William, Dr. Buscema, Dr. Qayyam (Great Meadow Correctional Facility), NA Carmella Greasely, NA Brazier, Dr. W.  Goodwin, RN N. Smith (Franklin Correctional Facility), RN K. Holmes, RN M. Burke, and Dr. Kim; and (2) a post-September 6, 2013, Eighth Amendment medical indifference claim against Dr. Vijay Kumar Mandalaywala (originally sued as Dr. Kumar).[1]

Defendants have moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure. (Dkt. No. 52.)  Defendants seek dismissal for: (1) lack of personal jurisdiction over Defendants Wheldon and Burke based upon insufficiency of service; (2) failure to state a claim against Dr. Mandalaywala; (3) statute of limitations bar and

---

[1] Of the remaining thirty-six Defendants, acknowledgments of service have been filed only on RN Blauvell, NP Daughtery, Dr. Mandalaywala, RN Sedar, Dr. Vertoske, Dr. Kim, RN Smith, NA Wheldon, RN Burke, Dr. Qayyam, and Dr. Ware. (Dkt. Nos. 20-24, 29, 39, 40, 42, 51, 71).  Sufficiency of service on NA Wheldon and RN Burke is being challenged by Defendants. (Dkt. No. 52-2.)

failure to state a claim against the remaining Defendants who have been served; and (4) failure to effect timely service against the remaining Defendants.  (Dkt. No. 52-5.)  Plaintiff has opposed the motion.  (Dkt. No. 58.)  For reasons explained herein, the Court recommends that: (1) Defendants Rule 12(b)(6) motion to dismiss be granted and Plaintiff's complaint be dismissed with prejudice against all Defendants who have been served with process; and (2) the action be *sua sponte* dismissed with prejudice for failure to state a claim against all Defendants who have not yet been served, or upon whom service may have been insufficient.

## II.    BACKGROUND[2]

Plaintiff believes he has been suffering from thyroid cancer and asymptomatic herpes since at least 1985, but because no one ever informed him or treated him for those ailments, he did not find out until May 2016 when he reviewed his DOCCS medical records.  (Dkt. No. 1 at ¶¶ 2, 3.[3])  According to Plaintiff, blood work done at Spafford and other facilities for juvenile delinquents in 1985, revealed he had thyroid cancer, but he was never told and never received treatment.  *Id*. at ¶ 3.

Plaintiff alleges he was seen and treated by numerous DOCCS medical personnel between 1994 and 2003 without anyone informing him he had thyroid cancer and asymptomatic herpes, without anyone providing him any treatment for the ailments, and without anyone documenting the ailments in Plaintiff's medical or mental healthcare records so that subsequent

---

[2]  The background facts are taken from the allegations in Plaintiff's complaint (Dkt. No. 1), along with documents the Court may properly consider on a motion to dismiss under Rule 12(b)(2), (3), and (6).

[3]  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

medical care providers would be aware and provide proper treatment.[4]  (*See generally* Dkt. No. 1 at ¶¶ 1, 3-19.)  Plaintiff also alleges he consulted Dr. Mandalaywala in or about May 2016 and informed the doctor that he was suffering from "severe pain from thyroid cancer, herpes, depression, anxiety and unknown cancer or disease and unknown mental illnesses and that it took over 40 years to study medical history then see [he had] thyroid cancer which every facility [he] was blood tested and as Juvenile Delinquent [he] was never told [he] was affected."  (Dkt. No. 1 at ¶ 27.)  Plaintiff claims to have told Dr. Mandalaywala the thyroid cancer and herpes had caused him to suffer mental illness including depression, anxiety, and impulsive and violent behavior.[5]  *Id*.

According to Plaintiff, Dr. Mandalaywala reviewed his medical records, performed a "medical evaluation assessment," ordered an HIV test, oversaw blood tests done by the nurse, studied the blood test results with another medical provider, discussed the results with Plaintiff and told him that his blood tests were normal, and prescribed Zantac (which Plaintiff claims he never received), Rantitidine, and Omeprazole for Plaintiff's gastric reflux.  *Id*. at ¶¶ at 28-30.  A document annexed to Plaintiff's complaint reveals he discussed his concern over his herpes symptoms returning with Dr. Mandalaywala, acknowledging he had no symptoms at the time, and was told by the doctor he would prescribe medication if Plaintiff's symptoms returned.  (Dkt. No. 1-1 at 10.)

---

[4]  With the exception of Dr. Mandalaywala, all Defendants remaining in the action after initial review are alleged to have seen or treated Plaintiff between 1994 and March 2003.  (Dkt. No. 1 at  ¶¶ 1, 3-19.)

[5]  Plaintiff also blames the criminal acts he committed when he was young on increased energy from his thyroid cancer.  (Dkt. No. 1 at ¶ 34.)

4

Plaintiff asserts Dr. Mandalaywala was negligent in: (1) failing to study Plaintiff's medical and mental health records and history in light of the seriousness of his illnesses; (2) failing to provide him treatment and counseling for his medical and mental illnesses; and (3) mis-diagnosing Plaintiff's medication and continued malpractice." *Id.* at ¶ 31.

## III.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged   but it has not shown   that the pleader is entitled to relief." *Id.* at 679  (internal citation and punctuation omitted).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.*  at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned,

the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).

On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint," quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court may also consider documents "possessed by or known to the plaintiff and upon which [he] relied in

6

bringing the suit." *ASTI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In addition, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at * 6 and n.41 (N.D.N.Y. Oct. 22, 2008)[6] (collecting cases).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV.    ANALYSIS

### A.    Statute of Limitations

#### 1.    Initial Review

On initial review, the Hon. Glenn T. Suddaby, Chief U.S. District Judge, found that liberally construed, Plaintiff's complaint alleged that Defendants RN Young, NA Wheldon, Dr. Vertoske, Dr. Rigaud, NP Daughtery, RN Blauvell, RN Riveria, RN Liverson, RN Lymmerman, RN Blunton, NA Jonathan, Dr. Ryan, Dr. Valencia, Dr. Corty Ann, RN Sedar, Nurse Koole, Dr. Choo, RN Bunchy, Dr. Costillo, Dr. Herryman, Dr. Ware, Dr. Punzal, Dr. Deposio, Dr. Qayyam

---

[6]  The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

(Wende Correctional Facility), NA McNeally, RN William, Dr. Buscema, Dr. Qayyam (Great

Meadow Correctional Facility), NA Greasely, NA Brazier, Dr. Goodwin, RN  Smith (Franklin

Correctional Facility), RN Holmes, RN Burke, and Dr. Kim deliberately failed to inform him he

had thyroid cancer and asymptomatic herpes and/or to treat him for those conditions, resulting in

the worsening of his medical and mental health status.  (Dkt. No. 4 at 8.)  Judge Suddaby

concluded Plaintiff had, therefore, alleged a plausible § 1983 claim for medical indifference in

violation of the Eighth Amendment claim.  *Id.*  Judge Suddaby also concluded, however, that any

claims asserted against those Defendants that arose prior to September 6, 2013, were time-barred

unless Plaintiff could demonstrate the limitations period was tolled, or that the claims were

otherwise timely.  *Id.* at 9.

Plaintiff's complaint, liberally construed, was found on initial review to allege that the

Defendant medical personnel who saw and treated him prior to September 16, 2013, had

fraudulently concealed his diagnosis preventing him from filing a timely lawsuit even with the

exercise of due diligence, and Defendants were ordered to respond to Plaintiff's complaint.[7]  *Id.*

at 10, 11, 22.

### 2.      Allegations Regarding the Above Defendants

According to the complaint, Plaintiff saw all of the medical professional Defendants

listed above during the period of time beginning on September 20, 1994, and ending March 7,

2003.  (Dkt. No. 12 at ¶¶ 2, 4-7, 9-12, 14, 19.)  Plaintiff alleges when he reviewed his medical

records in May of 2016, the records revealed that blood work done at Downstate Correctional

---

[7]  Judge Suddaby expressed no opinion as to whether Plaintiff's claims could withstand a
properly filed dispositive motion.  (Dkt. No. 4 at 11.)

Facility on September 20, 1994, showed he had thyroid cancer and asymptomatic herpes, but he was given no medication for either ailment. *Id*. at ¶ 2. Plaintiff appears to allege that Defendant Young was the facility RN and had access to Plaintiff's Admission Inmate Health Records, lab test results, and medical history, but neither Plaintiff nor any other facility was notified of the thyroid cancer and asymptomatic herpes. *Id*.

Despite Plaintiff's allegation that no other facility was notified of the thyroid cancer and asymptomatic herpes, he alleges in conclusory fashion that the Defendants who saw him from 1995 through March of 2003 studied his medical records and realized but never told him he had thyroid cancer and asymptomatic herpes, never gave him medication, and never updated his medical records to show he had thyroid cancer and asymptomatic herpes. (Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.) Those Defendants and the dates on which they allegedly saw Plaintiff, along with citations to the complaint, are:

| | | |
|---|---|---|
| RN Smith | 6/27-28/95 | Complaint ¶ 4 |
| Dr. Kim | 9/11/95 | Complaint ¶ 5 |
| RN Holmes, RN Burke | 11/22/95 | Complaint ¶ 6 |
| NA Wheldon | 1995, 1996 | Complaint ¶ 7 |
| Nurse Blauvell | 6/5/97, 6/12/97 | Complaint ¶ 9 |
| RN Riviera | 5/14/97 | Complaint ¶ 9 |
| RN Liverson | 6/5/97 | Complaint ¶ 9 |
| RN Lymmerman | 5/29/97 | Complaint ¶ 9 |
| RN Blunton | 5/9/97, 5/14/97 | Complaint ¶ 9 |
| NA Jonathan | 1997 | Complaint ¶ 9 |
| Dr. Ryan, Dr. Valencia | 3/3/98 | Complaint ¶ 10 |

| Dr. Corty Ann, RN Sedar, RN Bunchy | 8/22-23/97, 2/26/98 | Complaint ¶ 10 |
| Dr. Choo, Nurse Koole | 2/4/98, 2/21/98, 2/27/98, 3/2/98 | Complaint ¶ 10 |
| Dr. Punzal, Dr. Deposio, Dr. Goodwin, and NAS McNeally | During 9/9/98 and before and during 10/13/99 | Complaint ¶ 11 |
| Dr. Qayyam, | 9/9/98 and before and during 10/13/99, including 9/23/99, 9/28/99 | Complaint ¶¶ 11-12 |
| Dr. Buscema | 9/23/99 | Complaint ¶ 12 |
| NA Greasely | 9/27/99 | Complaint ¶ 12 |
| NA Brazier | 8/18/99 | Complaint ¶ 12 |
| Dr. Vertoske | 1/21/03, 3/7/03, 3/11/03 | Complaint ¶ 14 |
| Dr. Rigaud | 1/31/03, 3/7/03, 2/27/03 | Complaint ¶ 14 |
| NP Daugherty | 1/31/03, 3/7/03 | Complaint ¶ 14 |
| Dr. Costillo, Dr. Herryman, Dr. Ware | 10/2/98 | Complaint ¶ 19 |

3.    Statute of Limitations for 42 U.S.C. § 1983 Claims

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). In New York, such claims are governed by the general three-year limitations period governing personal injury claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Accrual of the claim, however, is a question of federal law. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

Under federal law, a claim arising under 42 U.S.C. § 1983 generally "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). "The crucial time for accrual

purposes is when the plaintiff becomes aware that he is suffering from a wrong for which

damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192

(2d Cir. 1980).

Although the statute of limitations is an affirmative defense, where it is clear from the

face of the complaint that a claim is barred by the applicable statute of limitations, the claim is

subject to dismissal for failure to state a claim on a Rule 12(b)(6) motion.  *See Ellul v.*

*Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of

limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of

limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face

of the complaint.")

### 4.  Equitable Tolling of the Statute of Limitations Based on Fraudulent Concealment

On initial review Judge Suddaby found that liberally construed, Plaintiff's argument that

Defendants concealed his diagnosis of thyroid cancer and herpes appeared to fall under the

"concept of fraudulent concealment of a cause of action."  (Dkt. No. 4 at 10.)

Under the doctrine of equitable tolling, "when a defendant fraudulently conceals the

wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff

discovers, or by the exercise of reasonable diligence should have discovered, the cause of

action." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (brackets in original);

*accord Daniel v. Safir*, 175 F. Supp. 2d 474, 480 (E.D.N.Y. 2001) ("A plaintiff seeking equitable

tolling of a limitations period must demonstrate that defendants engaged in a fraud which

precluded him from discovering the harms he suffered or the information he needed to file a

complaint.").  To benefit from the doctrine of equitable tolling based on fraudulent concealment,

the "plaintiff must submit non-conclusory evidence of conspiracy or other fraudulent wrongdoing *which precludes his possible discovery of harms that he suffered*." *Pinaud*, 52 F.3d at 1157 (emphasis in original).

"To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including (1) wrongful concealment by defendants [of their actions] (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *Richard v. LeClaire*, No. 9:15-CV-00006 (BSK/TWD), 2017 WL 4349381, at *2 (N.D.N.Y. Sept. 29, 2017) (quoting *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2913)). "The elements of fraudulent concealment must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Hodges v. Glenholme School*, ___ F. App'x ___, 2017 WL 5495513 (2d Cir. Nov. 16, 2017); *accord Koch v. Christie's International PLC*, 785 F. Supp. 2d 105, 116 (S.D.N.Y. 2011) ("a plaintiff attempting to apply fraudulent concealment must 'plead each of [the three elements of equitable tolling] with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.'") (quoting *National Group for Communications and Computers LTD. v. Lucent Technologies, Inc*. 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006)).

Plaintiff alleges he has had thyroid cancer since 1985. (Dkt. No. 1 at ¶ 3.) As noted above, Plaintiff's conclusory allegations against the Defendant medical personnel are essentially the same   they knew he had thyroid cancer and asymptomatic herpes because they had studied his medical records, they failed to give him medication, and they failed to update medical records to show the thyroid cancer and herpes. (Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14.) Significantly, the

12

Plaintiff does not allege that the Defendants' purpose in failing to tell him he had thyroid cancer and herpes, failing to treat him for those ailments, and failing to update his medical records was to cover up any wrongdoing, such as an earlier failure to diagnose, on any of their parts. Moreover, there are no allegations in the complaint plausibly showing that Defendants took any affirmative action to cover up those alleged actions after seeing Plaintiff. Therefore, the Court finds Plaintiff has failed to allege with particularity any wrongful concealment by Defendants of his cause of action against them for medical indifference in violation of his Eighth Amendment rights. Inasmuch as Plaintiff has failed to allege facts showing that Defendants engaged in any wrongful concealment, he must also be found to have failed to allege facts showing he was prevented from discovering the nature of his claims against them within the limitations period by virtue of wrongful concealment on their part.

The complaint also fails to show Plaintiff acted with due diligence in pursuing the discovery of his claims. There are no facts in the complaint showing Plaintiff took any reasonable steps to discover the existence and nature of his claims for medical indifference against each of the Defendants with regard to asymptomatic herpes.[8] Despite claiming he did not know about his asymptomatic herpes until May of 2016, Plaintiff has alleged in his complaint that he was told he had herpes when he was a new admission in the New York City Department of Corrections. (Dkt. No. 1 at ¶ 27.) When the outbreak cleared up, Plaintiff was told he did not have herpes any longer and the medicine he had been given for it was stopped. *Id*. While Plaintiff has admitted knowledge that he had herpes, he has alleged no facts plausibly showing

---

[8] Since there is nothing before the Court beyond Plaintiff's conclusory assertion that suggests he has, or has ever had, thyroid cancer, the Court has not focused on whether he acted with due diligence to discover it.

the exercise of due diligence on his part to follow up on Defendants' alleged failure to treat him for it.

Based upon the foregoing, the Court finds that Plaintiff has failed to make any showing whatsoever of fraudulent concealment by Defendants RN Blauvell, NP Daughtery, RN Sedar, Dr. Vertoske, Dr. Kim, RN Smith, NA Wheldon, RN Burke, Dr. Qayyam, and Dr. Ware, who saw Plaintiff between 1994 and 2003, and have been served with process, and recommends the complaint be dismissed with prejudice against them on statute of limitations grounds.

### B.    Failure to State a Claim

Even if Plaintiff's Eighth Amendment medical indifference claims against those served Defendants who saw Plaintiff between 1994 and 2003 were not barred by the statute of limitations, the Court finds they would be subject to dismissal for failure to state a claim under Rule 12(b)(6).

To substantiate an Eighth Amendment claim for medical indifference, a plaintiff must establish the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). This analysis comprises both objective and subjective components. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Objectively, the alleged deprivation must be sufficiently serious in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (internal quotation marks omitted).

Subjectively, the defendant must act with a sufficiently culpable state of mind, something more than mere negligence and akin to criminal recklessness. *Id.* A person acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

14

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Not every claim of inadequate medical treatment made by an inmate states a violation of the Eighth Amendment. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). A disagreement with the type of medical care provided is insufficient to state a constitutional claim; "the essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F. 2d 207, 215 (2d Cir. 1986); *see also Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") In addition, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

   1. Defendants Who Saw Plaintiff Between September 20, 1994, and March 7, 2003

[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged    but it has not shown    that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. at 678   (citation omitted). Plaintiff's allegation that he has had thyroid cancer since the mid-eighties is a "naked assertion" totally unsupported by specific facts plausibly showing he has, or has ever been diagnosed with, thyroid cancer. Moreover, the allegations in the complaint are inadequate to permit an inference of even the mere possibility of misconduct by this group of Defendants with regard to Plaintiff's claim of thyroid cancer or his asymptomatic herpes. (*See generally* Dkt. No. 1.)

a.    <u>Thyroid Cancer</u>

Plaintiff claims to have discovered the thyroid cancer when he was able to review his medical records in May of 2016, but his complaint does not identify a single medical record showing that he has ever been diagnosed with thyroid cancer.  (Dkt. No. 1 at ¶ 2.)  Moreover, none of the numerous medical records annexed to Plaintiff's complaint or included in his submission in opposition to Defendants' motion to dismiss lend support to his assertion that he has, or has ever had, thyroid cancer.  (*See* Dkt. Nos. 1-1, and 58-1.)

Plaintiff claims to have had blood work done on multiple occasions and had extensive lab tests over the years, and there is nothing in his complaint or the medical records suggesting he ever tested positive for any kind of thyroid dysfunction.  (Dkt. No. 1 at ¶¶ 3, 5-8, 13, 21, 27-29.)  In fact, FT4 and TSH blood work results on February 28, 1997, were within normal limits.  (Dkt. No. 1-1 at 31.)  Plaintiff has repeatedly been told there is nothing abnormal about his test results, and there is nothing wrong with him.  *Id*. at ¶¶ 3, 5-7, 11, 13-15, 18, 21.  Among the medical information annexed to Plaintiff's complaint is an April 4, 2016, letter from Carl J. Koenigsmann, M.D. former DOCCS Deputy Commissioner/Chief Medical Officer, informing Plaintiff his physical exam was essentially normal and extensive lab studies had been completed and the results were within normal limits.  *Id*. at 22.

In short, the only support for Plaintiff's claim that he has, or has ever had, thyroid cancer is his own conclusory assertion, which the Court finds inadequate to plausibly show that Plaintiff had a serious medical condition for purposes of satisfying the objective element of an Eighth Amendment medical indifference claim.  *See Iqbal,* 556 U.S. at 678.

16

Plaintiff has also failed to plausibly showing deliberate indifference on the part of any of this group of Defendants with regard to his thyroid cancer claim. Plaintiff's claim of deliberate indifference relies entirely on the conclusory assertion in his complaint that these Defendants reviewed his medical records and therefore knew he had thyroid cancer, but did not treat it and did not note it in his records. (Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.) The Court finds nothing in Plaintiff's complaint or the medical records submitted by him suggesting Defendants could have inferred from a review of his medical records that he had thyroid cancer, particularly given Plaintiff's allegations that none of the Defendants documented it in his medical records so that subsequent health care providers would know. (Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.) *See Farmer*, 511 U.S. at 837.

b.    <u>Asymptomatic Herpes</u>

Plaintiff describes himself as having "asymptomatic herpes HSV-2." (Dkt. No. 1 at ¶ 25.) He has alleged in his complaint that he became aware he had genital herpes when he was treated for an outbreak while a new admission in the New York City Department of Corrections. (Dkt. No. 1 at ¶ 27.) The Court has found no case law concluding asymptomatic herpes constitutes a serious medical condition for purposes of an Eighth Amendment medical indifference claim. There is, however, case law finding an untreated outbreak of genital herpes to be a serious medical condition. *See, e.g. Myrick v. Anglin*, 496 F. App'x. 670, 674 (7th Cir. 2012) (painful untreated outbreak of herpes recognized by the medical staff as requiring treatment was "objectively serious"). Therefore, solely for purposes of Defendants' motion to dismiss, the Court finds that a painful outbreak of untreated herpes is a serious medical condition, but that asymptomatic herpes is not.

Plaintiff has not alleged that he sought treatment for an outbreak of genital herpes from any of the Defendant medical providers who saw him between 1994 and 2003, or that he informed them he had been treated for genital herpes in the past. (*See generally* Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.)  Nor do the medical records annexed to Plaintiff's complaint or submitted in opposition to Defendants' motion reveal that Plaintiff suffered from, or was treated for, an outbreak of genital herpes by any of those Defendants. (*See generally* Dkt. Nos. 1-1 and 58-1.)

Inasmuch as Plaintiff's claim that Defendants were aware he had asymptomatic herpes is wholly conclusory, and there are no facts in the complaint and nothing in the medical records showing that Plaintiff saw any of those Defendants for an outbreak of genital herpes or that they failed to treat him for an outbreak, the Court finds Plaintiff has failed to make a plausible showing of deliberate indifference on their part as required to state a claim for Eighth Amendment medical indifference. *See Farmer*, 511 U.S. at 837 (deliberate indifference requires knowing disregard of an excessive risk to an inmate's health or safety).

c.    Conclusion

Based upon the foregoing, the Court concludes the served Defendants who saw Plaintiff between 1994 and 2003 are all entitled to dismissal of the complaint for failure to state a claim under Rule 12(b)(6).  Furthermore, since the Court has found nothing in Plaintiff's complaint or the medical documents submitted by him remotely suggesting he would be able to state a claim against these Defendants if he were granted leave to amend, the Court recommends the dismissal be with prejudice.

2.    Dr. Mandalaywala, Originally Sued as Dr. Kumar

On initial review, Judge Suddaby found that "[c]onstrued liberally, plaintiff alleges that in

18

2016, defendant [Mandalaywala] knew from studying plaintiff's medical records that plaintiff

suffers from thyroid cancer and herpes, but refused to treat plaintiff for those illnesses despite

plaintiff's complaints of pain and suffering" and determined that Plaintiff's Eighth Amendment

medical indifference claim against the doctor required a response.  (Dkt. No. 4 at 19.)

Plaintiff alleges in his complaint that he consulted Dr. Mandalaywala in or about May of

2016 and told the doctor he was suffering from thyroid cancer, herpes, depression, anxiety and

unknown cancer or disease and unknown mental illnesses, and it had taken him forty years to

study his medical history to learn he had thyroid cancer because no one had told him.  (Dkt. No.

1 at ¶ 27.)  According to Plaintiff, the thyroid cancer and herpes, among other ailments, had

caused his mental illness, including depression, anxiety, impulsive behavior, and violent

behavior, to become worse.  *Id.*

Annexed to Plaintiff's complaint is his June 10, 2016, grievance complaining about Dr.

Mandalaywala's failure to treat his herpes and thyroid cancer.  (Dkt. No. 1-1 at 8.)  Plaintiff

wrote:

> Why nothing is given for venereal disease of gonorrhea and herpes
> I have that keeps flaring up with round open sores and show of
> blood that gives me painful extreme hurt in the sores areas.  It left
> but it always come back it keeps me up without being able to sleep
> or be comfortable.  Neither was it mention in medical report I have
> these diseases it does state I have normal level of thyroid cancer.
> Can you affirm that thyroid is a cancer?

*Id.*  Plaintiff also wrote in the grievance, "I still suffer from thyroid as when I was on Rikers

Island in 1989 when given emergency sick call I never realized it's thyroid until now at Upstate

facility."  Plaintiff complained that he needed medication for herpes and it was never offered to

him.  *Id.*

19

The June 29, 2016, Inmate Grievance Resolution Committee ("IGRC") determination annexed to Plaintiff's complaint states:

> Thyroid is not cancer.  The thyroid is a gland and everyone has one.  There is no need to treat it.  Grieant (sic) has not reported any outbreak of STD's (sic) this year. Grievant has not reported any medical issues whatsoever through NSC [Nurse Sick Call] or ESC [Emergency Sick Call] since his refusal of Zantac on 3/24/16.

(Dkt. No. 1-1 at 9.)

In a July 27, 2016, grievance also annexed to Plaintiff's complaint, he wrote: "7-21-2016 [-] Dr. Kumar said once herpes returns then he'll give me medication for it.  I believe medication must be given to keep herpes from surfacing, especially since it's the kind that causes extreme pain and blood."[9]  *Id*. at 10.  The August 9, 2016, IGRC grievance determination stated "In reference to getting any meds, the doctor deems it unnecessary.  Meds are ordered on need not wants."  *Id*. at 11.

As with the medical personnel who saw Plaintiff from 1994 through 2003, the only support for Plaintiff's claim he has thyroid cancer is his own conclusory assertion, which is inadequate to make a plausible showing.  Plaintiff acknowledges in his complaint that Dr. Mandalaywala reviewed his medical records, oversaw Plaintiff's blood work, discussed the results with another provider, and told Plaintiff his blood work was normal.  (Dkt. No. 1 at ¶¶ 28-30.)  Moreover, Plaintiff's June 10, 2016, grievance indicates confusion on his part regarding the difference between having a thyroid and having thyroid cancer.  *Id*.  Because  Plaintiff has made

_____

[9]  The August 19, 2016, letter Plaintiff received from the United States Department of Health and Human Services in response to his inquiry regarding thyroid cancer and herpes, stated that treatment with antiviral drugs "is an option rather than a requirement for patients with no severe symptoms."  (Dkt. No. 1-1 at 45.)

no plausible showing he has thyroid cancer, and Dr. Mandalaywala had blood work and other laboratory tests done which showed normal results, the Court finds Plaintiff has also failed to make a plausible showing that Dr. Mandalaywala acted with deliberate indifference with regard to Plaintiff's claimed thyroid cancer.

Plaintiff has alleged in his complaint that he made Dr. Mandalaywala aware that he had herpes in May of 2016, and his July 27, 2016, grievance supports the doctor's awareness Plaintiff had the condition. (Dkt. Nos. 1 at ¶ 27; 1-1 at 10.) However, neither Plaintiff's complaint nor the medical and grievance records annexed to his complaint show that Dr. Mandalaywala saw Plaintiff when he was suffering a herpes outbreak, and the Court has found that asymptomatic herpes does not constitute a serious medical condition for purposes of an Eighth Amendment medical indifference claim. Plaintiff acknowledges in his July 27, 2016, grievance that Dr. Mandalaywala told him he would give Plaintiff medication if he had a herpes outbreak. (Dkt. No. 1-1 at 10.) However, it is clear from the grievance that Plaintiff wanted medication he could take all the time to prevent an outbreak from occurring. *Id*. The law is well-settled that disagreement with the type of medical care provided is insufficient to state a constitutional claim, and that the test is one of medical necessity. *Dean,* 804 F. 2d at 215.

Because of the foregoing, the Court finds that Plaintiff has failed to state an Eighth Amendment claim for medical indifference against Dr. Mandalaywala and recommends dismissal of the complaint against him. The Court also finds that giving Plaintiff an opportunity to amend his complaint would be futile and, therefore, recommends the dismissal be with prejudice.

### C.   *Sua Sponte* Dismissal Under 28 U.S.C. § 1915(e)

The Defendants who have yet to be served in this action or with regard to whom insufficiency of service is claimed are all medical professionals alleged to have seen Plaintiff between 1994 and 2003.  (*See* Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.)  The unserved Defendants include RN Young, RN Riveria, Dr. Rigaud, RN Liverson, RN Lymmerman, RN Blunton, NA Jonathan, Dr. Ryan, Dr. Valencia, Dr. Corty Ann, Nurse Koole, Dr. Choo, RN Bunchy, Dr. Costillo, Dr. Herryman, Dr. Ware, Dr. Punzal, Dr. Deposio, Dr. Qayyam (Wende Correctional Facility), NA McNeally, RN  William, Dr. Buscema, NA Greasely, NA Brazier, Dr. Goodwin, and RN Holmes. Those Defendants seek dismissal based upon Plaintiff's failure to serve them in a timely manner under Rule 4(m) of the Federal Rules of Civil Procedure and N.D.N.Y.  L.R. 4.1(b).  Defendants RN Burke and RN Wheldon seek dismissal based on insufficiency of service. (Dkt. No. 52-2 at 8-10.)  Because the Court is recommending *sua sponte* dismissal of the complaint with prejudice against those Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), it finds it unnecessary to address Defendants' service related grounds for seeking dismissal.

28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief can be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).   *See also Webster v. Penzetta*, 458 F. App'x. 23, 25 (2d Cir. 2012) ("A district court has inherent authority to dismiss meritless claims *sua sponte*."); *Ramrattan v. Fischer,* No. 13 Civ. 6890 (KPF), 2015 WL 3604242, at *3 (S.D.N.Y. June 9, 2015) ("[E]ven where Defendants have not sought dismissal of a particular claim, the Court has the authority to screen sua sponte an *in forma pauperis*

complaint and must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.") (citing 28 U.S.C. § 1915(e)(2)(B) and *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)).

Plaintiff's allegations supporting his Eighth Amendment medical indifference claims against the unserved and allegedly inadequately served Defendants are for all intents and purposes the same as those asserted against the served Defendants who saw Plaintiff during the period 1994 to 2003.  (*See* Dkt. No. 1 at ¶¶ 2, 4-7, 9-12, 14, 19.)  The Court has found that Plaintiff's Eighth Amendment medical indifference claims against the served Defendants are barred by the applicable statute of limitations and failure to state a claim and has recommended dismissal of the complaint as against them with prejudice.  Therefore, the Court concludes it must also recommend *sua sponte* dismissal of the complaint with prejudice against the unserved and inadequately served Defendants against whom the same claims have been asserted.  *See Ramrattan,* 2015 WL 3604242, at *3.

ACCORDINGLY, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 46) be **GRANTED** as to Defendants RN Blauvell, NP Daughtery,  Dr. Mandalaywala, RN Sedar, Dr. Vertoske, Dr. Kim, RN Smith, Dr. Qayyam, Dr. Ware and, and Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as against them; and it is further

**RECOMMENDED** that Plaintiff's complaint be *sua sponte* **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim as against

Defendants RN Young, NA Wheldon, Dr. Rigaud, RN Riveria, RN Liverson, RN Lymmerman,

RN Blunton, NA Jonathan, Dr. Ryan, Dr. Valencia, Dr. Corty Ann, Nurse Koole, Dr. Choo, RN

Bunchy, Dr. Costillo, Dr. Herryman, Dr. Ware, Dr. Punzal, Dr. Deposio, Dr. Qayyam (Wende

Correctional Facility), NA McNeally, RN  William, Dr. Buscema, NA Greasely, NA Brazier, Dr.

Goodwin, RN Holmes, and RN M. Burke; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written

objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**</u>

<u>**PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated: January 24, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[10]  If you are proceeding *pro se* and are served with this Order and Report-
Recommendation by mail, three additional days will be added to the fourteen-day period,
meaning that you have seventeen days from the date the Order and Report-Recommendation was
mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed
period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of
the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2017 WL 5495513
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals,
Second Circuit.

Schelle HODGES, Plaintiff-Appellant,
v.
GLENHOLME SCHOOL, AKA The Glenholme
School, Devereux Connecticut, Other, The Devereux
Foundation, Inc., Claudia Nicholas, Stephen
Nicholas, Devereux Foundation, Inc., "John Doe,"
Two, "John Doe," Three, Defendants-Appellees,
"John Doe," One, Defendant.

No. 16-3446
|
November 16, 2017

Appeal from a final judgment of the United States District
Court for the District of Connecticut (Underhill, *J.*).
**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: WILLIAM H. GORDON
(Mitchell Garabedian, on the brief) Law Offices of
Mitchell Garabedian, Boston, MA; (Andrea Bierstein,
on the brief), Simmons Hanly Conroy, New York, New
York; (Steven J. Errante, Marisa A. Bellair, on the brief),
Lynch, Traub, Keefe, & Errante, P.C., New Haven, CT.

For Defendants-Appellees: Glenholme School, AKA
The Glenholme School, Devereux Connecticut, Other,
The Devereux Foundation, Inc., JONATHAN A.
KOCIENDA (Michael R. McPherson, on the brief),
Danaher Lagnese, PC, Hartford, CT.

For Defendant-Appellee: Claudia Nicholas TIMOTHY
BRIGNOLE, Brignole, Bush & Lewis, Hartford, CT.

For Defendant-Appellee: Stephen NicholasJEFFREY C.
NICHOLAS, The Nicholas Law Firm, LLC, Torrington,
CT.

PRESENT: ROBERT A. KATZMANN, Chief Judge,
RAYMOND J. LOHIER, JR., CHRISTOPHER F.
DRONEY, Circuit Judges.

## SUMMARY ORDER

 **\*1** Plaintiff-Appellant Schelle Hodges appeals from a
final judgment dismissing her amended complaint with
prejudice, entered on September 19, 2016, by the United
States District Court for the District of Connecticut
(Underhill, *J.*). We assume the parties' familiarity with the
underlying facts, procedural history, and issues on appeal.

Hodges enrolled at Defendant-Appellee The Glenholme
School in the spring of 1981 at the approximate age of
thirteen. Glenholme is operated by Defendant-Appellee
The Devereux Foundation, and employed Defendants-
Appellees Claudia and Stephen Nicholas during the
relevant time period.

On July 30, 2015, Hodges filed suit in the United States
Court for the District of Connecticut against Glenholme,
Claudia and Stephen Nicholas, and the three John Does,
alleging that Claudia and Stephen Nicholas sexually
assaulted her while she attended Glenholme from 1981
to 1982. Under Connecticut law, Hodges had thirty
years from the "age of majority" (eighteen years old) to
commence a civil action seeking damages for personal
injury based on the sexual abuse of a minor. Conn. Gen.
Stat. §§ 52-577d, 1-1d. Because an action is commenced
under Connecticut law for statute of limitations purposes
"once the writ, summons and complaint have been served
upon a defendant," *Rana v. Ritacco*, 236 Conn. 330, 337,
672 A.2d 946 (1996), the parties agree that Hodges had

until August 1, 2015 (her forty-eighth birthday) to file her complaint and serve process.

Although Hodges timely filed her complaint, she did not deliver the writ, summons, and complaint to the marshal until August 5, 2015, and the marshal did not attempt to effectuate service until August 6, 2015. The defendants accordingly moved to dismiss, arguing that Hodges' complaint was time-barred. Before the motions could be decided, however, Hodges amended her complaint to allege that the defendants fraudulently concealed her cause of action, thereby tolling the statute of limitations, and to add Devereux as a party. The district court denied the pending motions as moot, and the defendants again moved to dismiss on statute of limitations grounds.

The district court granted the renewed motions on September 13, 2016, holding that Hodges had failed to plausibly allege that the defendants had fraudulently concealed her cause of action, that her action was therefore time-barred, and that Connecticut's accidental failure of suit statute, Conn. Gen. Stat. § 52-592(a), did not permit Hodges to refile her action. The district court entered final judgment on September 19, 2016 dismissing Hodges' amended complaint with prejudice, and Hodges timely appealed on October 11, 2016.

We review a district court's decision to grant a motion to dismiss *de novo*, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). We review the denial of leave to amend for abuse of discretion, *id.*, but if the leave to amend is denied as futile, the decision is a matter of law that is reviewed *de novo*, *Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

**\*2** We agree with the district court that Hodges has failed to plausibly plead fraudulent concealment. The Connecticut fraudulent concealment statute sets forth that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Conn. Gen. Stat. § 52-595. This requires a three-part showing under Connecticut law:

> (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action.

*Bartone v. Robert L. Day Co.*, 232 Conn. 527, 533, 656 A.2d 221 (1995).[1] In addition, the parties agree that "[a]lthough § 52-595 does not explicitly say so, it clearly implies [a] plaintiff's ignorance of the facts is a necessary element of tolling under that statute." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 427 (2d Cir. 1999). A plaintiff must therefore also show that he or she was "ignorant of the facts that the defendant has sought to conceal." *Id.* The elements of fraudulent concealment must be pled with particularity under Rule 9(b). *Armstrong v. McAlpin*, 699 F.2d 79, 88–89 (2d Cir. 1983).

In brief, Hodges alleges that Glenholme and Devereux knew that Claudia Nicholas "posed a danger" to her because they had "information" that Claudia Nicholas had "inappropriate relationships with others" at Glenholme and had "engaged in conduct involving serious boundary violations." First Amended Complaint ("FAC") ¶ 28. Glenholme and Devereux, however, allegedly concealed these facts from Hodges' mother and told her that Hodges' relationship with Claudia Nicholas was "beneficial." FAC ¶¶ 25, 28. As a result, Hodges did not learn that the alleged sexual conduct was "abusive" and "wrongful" until she spoke about the events with a friend in 2013, FAC ¶¶ 23, 27, and she argues that the statute of limitations therefore did not begin to run until that date.

We do not determine whether Hodges has sufficiently pled the elements of fraudulent concealment set forth in *Bartone* because Hodges has failed to plausibly allege that she was "ignorant of the facts that the [defendants have] sought to conceal." *See Martinelli*, 196 F.3d at 427. Hodges does not argue that she did not remember the alleged sexual conduct until 2013. Instead, she principally asserts that because of her age and "other serious emotional issues," she was not able to understand

until the spring of 2013 that the sexual contact was "wrongful." FAC ¶¶ 23, 27.

Under Connecticut law, however, "[t]he focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." *BellSouth Telecomms, Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 611 (2d Cir. 1996) (quoting *Catz v. Rubenstein*, 201 Conn. 39, 47, 513 A.2d 98 (1986)); *see United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("[A] plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should [not] receive identical treatment."). Hodges' delayed understanding that the sexual conduct was wrongful, *i.e.*, illegal, is not a "fact" necessary to establish her causes of action against the defendants. It is an understanding of law and not a basis to toll the statute of limitations.

**\*3** We further find that Hodges has forfeited her alternative theory, raised for the first time in her reply brief, that she was ignorant until 2013 of the "causal connection" between her emotional and mental harm and her sexual abuse. "[A]rguments not made in an appellant's opening brief are waived even if the appellant ... raised them in a reply brief," *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005), and Hodges does not argue that we should use our discretion to excuse her error, let alone that "manifest injustice would otherwise result," *see id.* (citing *Frank v. United States*, 78 F.3d 815, 833 (2d Cir. 1996), *vacated on other grounds*, 521 U.S. 1114, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997); *United States v. Babwah*, 972 F.2d 30, 34–35 (2d Cir. 1992)). [2]

We finally conclude that the district court did not err in holding that Connecticut's accidental failure of suit statute did not save Hodges' action. Conn. Gen. Stat. § 52-592(a) allows a plaintiff to re-file a dismissed action, within one year of dismissal, if two requirements are met: (1) the original action must have been "commenced" within the applicable statute of limitations; and (2) the original action must have failed because of one of the specific procedural reasons enumerated in the statute. Even assuming, *arguendo*, that Hodges timely "commenced" her action under § 52-592(a), *see Rocco v. Garrison*, 268 Conn. 541, 550-51, 848 A.2d 352 (2004) (distinguishing commencement for the purposes of a statute of limitations from that of § 52-592), she does not argue on appeal that this case falls within one of the statute's enumerated procedural reasons for failure. We therefore find that § 52-592(a) is inapplicable.

We have considered all of Hodges' contentions on appeal and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

### All Citations

--- Fed.Appx. ----, 2017 WL 5495513

### Footnotes

1  Hodges asserts that a different standard applies because the defendants allegedly owed her a fiduciary duty. This is incorrect. While the presence of a fiduciary duty is relevant to the fraudulent concealment analysis, it does not replace the three elements set forth in *Bartone*. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 424 (2d Cir. 1999). Instead, it informs the court's analysis as to the second element: the defendant's intentional concealment of the facts from the plaintiffs. *Id.*

2  While Hodges' counsel asserted during oral argument on defendants' motions to dismiss before the district court that Hodges could amend her pleadings to allege that she had "repressed" the memories of her abuse, App. 102, she did not raise the issue on appeal as a reason for why amendment would not be futile. Indeed, although her brief cites numerous portions of the oral argument transcript in support of her contention that she "could state additional facts further showing fraudulent concealment by the defendants," none of these citations include any reference to an amendment alleging repression. *See* Br. 45-46. We therefore consider the argument abandoned. *See JP Morgan Chase*, 412 F.3d at 428 (arguments pursued in the district court but not made in the appellant's opening brief are abandoned).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3604242
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jerry RAMRATTAN, Plaintiff,
v.
Brian FISCHER, et al., Defendants.

No. 13 Civ. 6890(KPF).
|
Signed June 9, 2015.

*OPINION AND ORDER*

KATHERINE POLK FAILLA, District Judge.

**\*1** Plaintiff Jerry Ramrattan, a New York State prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S .C. § 2000cc ("RLUIPA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 (the "ADA"). Plaintiff alleges that the failure of the New York State Department of Corrections and Community Supervision ("DOCCS") to hire a Hindu chaplain and provide meals compliant with his religious beliefs violates his rights under the Free Exercise Clause of the First Amendment and RLUIPA. Plaintiff also brings an ADA claim in connection with his claimed need for hearing aids. Defendants have moved to dismiss the Complaint for failure to state a claim. For the reasons discussed herein, that motion is granted.

## BACKGROUND [1]

### A. Factual Background
Plaintiff practices the Hindu religion. (Compl.5). Upon arriving in DOCCS custody, Plaintiff identified himself as a member of the Hindu faith, and attempted to seek out a Hindu chaplain who could assist him in the practice of his religion. (*Id.*). Plaintiff was informed that DOCCS did not employ a Hindu chaplain. (*Id.*). Plaintiff then began filing grievances and writing letters to various officials within and outside of DOCCS, complaining about the lack of a Hindu chaplain and advocating for the hiring of one. (*Id.*). In response to his numerous inquiries, Plaintiff was

informed that it was not fiscally possible for DOCCS to employ a chaplain for every religious group, especially where the population of inmates practicing a particular religion was very small. (*See, e.g.,* Dkt. # 2–2 at 18). In the case of Hinduism, he was told, far less than one percent of the prison population had identified as Hindu (*viz.,* fewer than 50 inmates out of a population of over 55,000). (*See id.*). Plaintiff was repeatedly advised to follow the procedure set forth in DOCCS Directive # 4202 on Religious Programs and Practices and was encouraged to work with the coordinating chaplain at his facility to locate a religious volunteer to assist him in the practice of his religion. (*See id.; see also* Dkt. # 2–2 at 31, 32, 35, 36, 38; Dkt. # 2–3 at 3, 4; Dkt. # 2–6 at 31).

Plaintiff did write the coordinating chaplain at Auburn Correctional Facility, who informed Plaintiff that he would help provide materials and support. (Compl.37). He further explained that although DOCCS could not accommodate a "group meet" or other group-oriented religious services for "just one person," Plaintiff "MOST CERTAINLY" [*sic* ] would be "allowed to worship in the privacy of [his] cell as needed." (*Id.*). The coordinating chaplain at Great Meadow Correctional Facility [2] later provided Plaintiff with a similar response. (*See* Dkt. # 2–6 at 31). Despite these communications, Plaintiff alleges that DOCCS's failure to hire a Hindu chaplain has interfered with his ability to practice his religion and constitutes unlawful religious discrimination. (Compl.5–6). Plaintiff further complains that he has been forced to eat foods that do not comport with his religious dietary restrictions, and that he has been unable to observe unspecified "religious holy days and rites." (*Id.* at 5).

**\*2** In addition to his claims based on religion, Plaintiff also alleges that, in response to his numerous grievances, he has been subjected to retaliation by Defendants. (Compl.8–9). Finally, in a single sentence near the end of his narrative, Plaintiff alleges that Defendants have violated his rights under the ADA. (*Id.* at 9).

### B. Procedural Background
On September 27, 2013, Plaintiff initiated this lawsuit against Defendants, seeking $25 million in damages, including "punitive rewards for deliberate indifference, pain (spiritual and emotional), religious suffering, religious discrimination, physical suffering, discriminatory hiring practices, violations of my

constitutional rights ... and direct harm from foods ingested." (Compl.11). Plaintiff also sought injunctive relief in that DOCCS be required to hire a Hindu chaplain and that DOCCS "provide for [his] religious needs in all aspect[s]." (*Id.*).

On October 31, 2013, this Court issued an order of service. In addition to directing Plaintiff to complete the paperwork that would permit the United States Marshals Service to effect service on his behalf, the Order also dismissed DOCCS from the case as an entity that could not be sued under Section 1983 due to Eleventh Amendment immunity. (Dkt.# 6).[3] Between November 2013 and March 2014, Plaintiff sent the Court numerous letters setting out Plaintiff's allegations concerning retaliation against him for filing the instant lawsuit, and seeking a protective order. (*See* Dkt. # 7, 9–12, 14, 18–21). The Court denied Plaintiff's requests contained within those letters and provided guidance as to how to proceed with new complaints. (Dkt.# 20). Nonetheless, Plaintiff continued to submit numerous letters to the Court concerning matters outside the scope of his claims in this lawsuit. (*See, e.g.,* Dkt. # 22–24, 34, 41).

On June 27, 2014, Defendants submitted a pre-motion letter describing their proposed motion to dismiss and requesting a conference. (Dkt.# 43). On July 24, 2014, Plaintiff submitted a response to Defendants' pre-motion letter that addressed the substance of Defendants' proposed motion. (Dkt.# 46). The Court held a telephonic pre-motion conference with all parties on July 29, 2014. (*See* Dkt. # 52 ("July 29, 2014 Tr.")). Among other things, at that conference, the Court ensured that Plaintiff understood that he would have another opportunity to respond more fully to Defendants' motion once they filed it. (*Id.* at 4–5). As it happened, Plaintiff did not submit an opposition to Defendants' motion to dismiss; accordingly, given Plaintiff's *pro se* status, the Court accepts Plaintiff's opposition to Defendants' pre-motion letter as his opposition to their motion.

In their motion papers, Defendants argue that the Complaint should be dismissed because: (i) Plaintiff cannot maintain an ADA claim against individuals; (ii) damages against Defendants in their official capacities are barred by the Eleventh Amendment; (iii) money damages are not available to Plaintiff under RLUIPA; (iv) Plaintiff fails adequately to allege the individual Defendants'

personal involvement in any alleged constitutional violation; (v) Plaintiff fails to state a cognizable constitutional violation to sustain a Section 1983 claim; and (vi) Plaintiff fails to state a cognizable claim for retaliation. (Def.Br.1–2, 4–12). In his opposition, Plaintiff argues that he has stated claims, and provides incremental factual information, as discussed further below. (*See generally* Pl. Opp.).

## DISCUSSION

**A. Motions to Dismiss Under Fed.R.Civ.P. 12(b)(6)**
**\*3** Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering such a motion, a court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir.2011) (internal quotation marks omitted) (quoting *Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82, 88 (2d Cir.2009)).

A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)). The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman,* 517 F .3d 140, 149 (2d Cir.2008) (citation and internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir.2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (quoting *Int'l*

*Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted) (citing *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)); *accord McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill v. City of New York,* No. 13 Civ. 8901(KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted). Further, even where Defendants have not sought dismissal of a particular claim, the Court has the authority to screen *sua sponte* an *in forma pauperis* complaint at any time and must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998).

## B. Plaintiff's ADA Claims Are Dismissed

### 1. Applicable Law
**\*4** The purpose of the ADA is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Andino v. Fischer,* 698 F.Supp.2d 362, 378 (S.D.N.Y.2010) (internal quotation marks omitted). Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To state a claim under the statute, then, a plaintiff must plead "[i] that he is a 'qualified individual' with a disability; [ii] that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and [iii] that such exclusion or discrimination was due to his disability." *Varney v. Many,* No. 13 Civ. 5285(VB), 2015 WL 1730071, at *3 (S.D.N.Y. Apr. 14, 2015) (citing *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir.2003)). Critically, plaintiff must allege his mistreatment "was

motivated by either discriminatory animus or ill will due to disability." *Id.* (internal quotation marks omitted). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Id.* (citing *Elbert v. N.Y. State Dep't of Corr. Servs.,* 751 F.Supp.2d 590, 595 (S.D.N.Y.2010) (collecting cases)).

### 2. Analysis
Plaintiff contends that "all the defendants and employees and staff violated the ADA [ ][be]cause I have hearing aids." (Compl.9). Defendants argue that Plaintiff's claims must be dismissed because an ADA claim cannot be brought against individuals; Defendants do not otherwise address the merits of Plaintiff's claim. (Def.Br.4).

### a. Plaintiff's ADA Claims Against Individual Defendants Are Dismissed with Prejudice
Defendants are correct that "individuals cannot be named as defendants in ADA suits in either their official or representative capacities." *Tavares v. N.Y.C. Health & Hosps. Corp.,* No. 13 Civ. 3148(PKC)(MHD), 2015 WL 158863, at *7 n. 8 (S.D.N.Y. Jan. 13, 2015) (citing *Carrasquillo v. City of New York,* 324 F.Supp.2d 428, 441 (S.D.N.Y.2004) (dismissing ADA claims against individuals)); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001) (holding that Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials"). Plaintiff's ADA claims are therefore dismissed with prejudice against the individual Defendants.

### b. Plaintiff's ADA Claims Against the State Are Dismissed Without Prejudice
Construed liberally, Plaintiff's complaint can be read to assert an ADA claim against New York State (or DOCCS, the State's agency). Such a claim is actionable under *Tennessee v. Lane,* 541 U.S. 509 (2004), which upheld the ADA's abrogation of a State's Eleventh Amendment immunity, and found that liability extends to include state and local governments, as well as their agencies and instrumentalities. Even if the State or DOCCS were currently party to this action, however, Plaintiff's claim must nevertheless be dismissed.

**\*5** Plaintiff's claim fails because it is a bare, conclusory allegation that does not provide "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 569. First, Plaintiff does not adequately allege any disability, nor does he allege that Plaintiff was prevented from participating in or benefiting from prison programs and services because of his disability: his mere recitation of "because I have hearing aids" is not enough. He does not allege that he has hearing loss or any other disability. When an ADA claim fails to allege that plaintiff was a "qualified individual with a disability," it must be dismissed. *See, e.g., Veloz v. New York,* 178 F. App'x 39, 41 (2d Cir.2006) (summary order) (affirming dismissal of ADA claim where inmate did not demonstrate he was a "qualified individual with a disability").

Likewise, when an ADA claim does not state that a plaintiff was *excluded* from a prison service or program, it must be dismissed. *See Carrasquillo,* 324 F.Supp.2d at 443 (dismissing ADA claim where inmate alleged only that he had difficulty walking to law library and infirmary, not that he was prevented altogether from accessing them, and admitted access on several occasions); *Devivo v. Butler,* No. 97 Civ. 7919(HB), 1998 WL 788787, at \*4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind). Finally, Plaintiff does not allege any discriminatory animus, or that he was excluded from any public service because of ill will against his disability. *See Varney,* 2015 WL 1730071, at \*3. Accordingly, Plaintiff's ADA claims are dismissed in their entirety.

Plaintiff has not sought leave to amend his Complaint. However, the principle that the "court should freely give leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2), is particularly applicable to *pro se* plaintiffs, *see Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003). "A *pro se* complaint should not be dismissed without the court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal quotation marks omitted). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir.2002) (internal quotation marks omitted).

Plaintiff's opposition to Defendants' pre-motion letter provides information, albeit sparse, suggesting that an amendment of his ADA claim may not be futile. Specifically, Plaintiff asserts that he has been classified by an audiologist as "HL 30," and argues that he is entitled to certain accommodations under DOCCS Directive # 2612, which addresses accommodations for inmates with hearing impairments. (Pl.Opp.3).[4] He also contends that he has been "denied access" to certain services, including the "Resource Room and the tele-fax machine," although he does not make clear that the denial of access is *because of* ill will towards his disability, or whether he was entirely excluded from those services. (*Id.*). He also claims that he "can't use the regular telephone" since he has not been provided with hearing aids. (*Id.*).[5] But even if Plaintiff's alleged hearing disability does prevent him from using certain services, this is not enough: not receiving proper treatment for a disability is not enough to sustain an ADA claim. Rather, Plaintiff must allege that he was mistreated *because of* his disability. *See Elbert,* 751 F.Supp.2d at 596 (dismissing ADA claims where "Plaintiff [was] claiming that Decedent was not properly treated *for* his [disability], not that he was mistreated *because of* his [disability]" (emphases in original)); *see also Varney,* 2015 WL 1730071, at \*3.

**\*6** The Court therefore will permit Plaintiff to amend his ADA claims, if he believes he can allege facts that support the elements of such a claim as set forth herein. If Plaintiff chooses to amend his ADA claims, he may also amend to add the public entity DOCCS, despite its prior dismissal from this action. If Plaintiff fails to re-plead these claims adequately, they may be dismissed with prejudice.

## C. Plaintiff's Claims of Religious Deprivation Are Dismissed

Plaintiff brings his religious-liberty claims pursuant to two separate statutes: 42 U.S.C. § 1983 and Section 3 of RLUIPA, 42 U.S.C. § 2000cc–1.

### 1. Applicable Law

#### a. Claims Under Section 1983

Plaintiff first relies on Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of [Section] 1983 is to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161 (1992). As such, a "[Section] 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998).

In attempting to ascertain the putative violation of rights underlying Plaintiff's Section 1983 claim, Defendants have construed the Complaint to allege violations of the Free Exercise Clause of the First Amendment, which guarantees the right to the free exercise of religion. Convicted felons do not relinquish this right upon incarceration. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." (internal citations omitted)); *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." (internal citation omitted)). It is well-accepted, however, that a prisoner's right to exercise his religion involves considerations that do not apply to persons outside of the penal system. Namely, "the prisoner's right is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Woodward v. Perez,* No. 12 Civ. 8671(ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (internal quotation marks omitted); *see also Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) ("A prisoner's right to practice his religion is ... not absolute."). Accordingly, free exercise claims of prisoners are judged "under a reasonableness test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir.2006) (quoting *O'Lone,* 482 U.S. at 349); *see Vann v. Fischer,* No. 11 Civ.1958(KPF), 2014 WL 4188077, at *8–14 (S.D.N.Y. Aug. 25, 2014) (finding burdens imposed on inmates wearing religious beads were reasonably related to legitimate penological interest of inmate safety), *reconsideration denied,* No. 11 Civ.1958(KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015).

*7 Under this reasonableness test, a prisoner asserting a free exercise claim "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d at 274–75.[6] "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* at 275 (alterations and internal quotation marks omitted).

"A substantial burden on religious exercise exists when an individual is required to choose between following the precepts of his religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of his religion on the other hand." *Vann,* 2014 WL 4188077, at *9 (alterations and internal quotation marks omitted) (citing *Westchester Day Sch. v. Village of Mamaroneck,* 504 F.3d 338, 348 (2d Cir.2007)). Plaintiff need not show that the disputed conduct impedes a religious practice mandated by his religion, but he must show that it burdens a religious practice that is "central or important" to his practice of religion. *Ford,* 352 F.3d at 593–94. "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Woodward,* 2014 WL 4276416, at *4 (internal quotation marks omitted); *see also McEachin v. McGuinnis,* 357 F.3d 197, 202 (2d Cir.2004).

Although Defendants do not address it, this Court also construes Plaintiff to have alleged violations of the First Amendment's Establishment Clause. Indeed, in his opposition to Defendants' pre-motion letter, Plaintiff specifically refers to the Establishment Clause. (Pl.Opp.4). The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. In deciding an Establishment Clause claim, courts in this Circuit continue to apply the three-prong test articulated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602 (1971). *See Bronx Household of Faith v. Bd. of Educ. of N.Y.C.,* 650 F.3d 30, 40 n. 9 (2d Cir.2011) ("Although the *Lemon* test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit."). Under *Lemon,* "government action which interacts with religion [i] must have a secular purpose, [ii] must have a principal or primary effect that neither advances nor inhibits religion, and [iii] must not foster an excessive government entanglement with religion."

*Bronx Household of Faith,* 650 F.3d at 40 (alterations and internal quotation marks omitted) (citing *Lemon,* 403 U.S. at 612–13). "[A]t the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion." *Pugh v. Goord,* 571 F.Supp.2d 477, 494 (S.D.N.Y.2008) (quoting *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 703 (1994)).

**\*8** Given that plaintiff is a prisoner challenging a DOCCS action or regulation, "the *Lemon* test is tempered by the test laid out by the Supreme Court in [*Turner v. Safley,* 482 U.S. 78 (1987) ], which found that a prison regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests." *Pugh,* 571 F.Supp.2d at 494 (internal quotation marks omitted). Additionally, "in the prison context, the [E]stablishment [C]lause has been interpreted in the light of the affirmative demands of the [F]ree [E]xercise [C]lause." *Muhammad v. N.Y.C. Dep't of Corr.,* 904 F.Supp. 161, 198 (S.D.N.Y.1995) (internal quotation marks omitted); *see also id.* ("In order to permit inmates to freely exercise their religion, *some* entanglement is necessary." (emphasis in original)). As discussed further below, regardless of the underlying constitutional violation Plaintiff alleges—whether under the Free Exercise Clause, the Establishment Clause, or something else entirely—he must allege the personal involvement of Defendants to state a claim under Section 1983. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006).

**b. Claims Under RLUIPA**
"RLUIPA offers similar protections to prisoners as the Free Exercise Clause but heightens the standard for both plaintiffs and defendants." *Woodward,* 2014 WL 4276416, at \*6 (citation and internal quotation marks omitted). "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise'[ ] of inmates in certain institutions unless the government shows that the burden furthers a compelling interest by the least restrictive means." *Salahuddin v. Goord,* 467 F.3d at 273 (footnote omitted) (quoting 42 U.S.C. § 2000cc–1(a)). "Only if a plaintiff shows that his religious exercise has been substantially burdened, do the defendants need to show something more than a rational relationship between the policy at issue and a governmental interest." *Woodward,* 2014 WL 4276416, at \*6. If the plaintiff demonstrates that the "state has imposed a substantial burden on the exercise of his religion[,] ... the state may overcome a RLUIPA claim

by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (citing 42 U.S.C. § 2000cc–1(a)).

**2. Analysis**

**a. Official Capacity Damages Claims Brought Under Section 1983 Are Dismissed**
The Eleventh Amendment, as a general matter, makes states immune from suit. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996). Eleventh Amendment immunity applies also to state officials sued in their official capacities. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101–02 (1984). "Employees of DOC[C]S and its facilities, when sued in their official capacities, have been held to be subject to the State's Eleventh Amendment immunity." *Lyerly v. Phillips,* No. 04 Civ. 3904(PKC), 2005 WL 1802972, at \*3 (S.D.N.Y. July 29, 2005) (collecting cases). "The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his individual or personal capacity." *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (internal quotation marks omitted). Thus, to the extent Plaintiff sues Defendants in their official capacities under Section 1983, his claims are dismissed. He may still, however, seek money damages against Defendants in their personal capacities.

**b. Official and Individual Capacity Damages Claims Brought Under RLUIPA Are Dismissed**
**\*9** RLUIPA does not afford a plaintiff a cause of action for money damages against individual defendants in either their official capacities, *Sossamon v. Texas,* 131 S.Ct. 1651, 1663 (2011), or their individual capacities, *Washington v. Gonyea,* 731 F.3d 143, 145 (2d Cir.2013). Accordingly, to the extent Plaintiff seeks monetary damages under RLUIPA, those claims are dismissed.

Plaintiffs may, however, seek injunctive relief against officials in their official capacities. *See Sossamon,* 131 S.Ct. at 1658 (holding that "a waiver of sovereign immunity to other types of relief does not waive immunity to damages"); *id.* at 1666 (Sotomayor, J., dissenting) (observing that "the majority appears to accept that equitable relief is available to RLUIPA plaintiffs"); *see*

*also Goode v. Bruno,* No. 10 Civ. 1734(SRU), 2013 WL 5448442, at *7 (D.Conn. Sept. 30, 2013) (permitting a RLUIPA claim for injunctive relief to continue past summary judgment). [7] All that remains for this Court's consideration, then, are his claims for injunctive relief under RLUIPA and his claims for personal capacity monetary damages under Section 1983.

### c. Plaintiff Has Failed to Plausibly Allege the Personal Involvement of Defendants

Plaintiff brings claims against 12 individual Defendants, including the Governor of the State of New York, the Commissioner of the New York State Police, the former Commissioner of DOCCS, six facility superintendents, and a DOCCS Director. As a prerequisite to relief under both Section 1983 and RLUIPA, a plaintiff must show the personal involvement of defendants in the alleged constitutional deprivations. *See Farrell,* 449 F.3d at 484 (Section 1983); *Covington v. Mountries,* No. 13 Civ. 343(VEC), 2014 WL 2095159, at *5 (S.D.N.Y. May 20, 2014) (RLUIPA). To show personal involvement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

A court may consider supervisory personnel "personally involved" if a plaintiff plausibly alleges facts showing that those defendants: (i) participated directly in the alleged constitutional violation; (ii) failed to remedy the wrong after being informed of it; (iii) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts. *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). [8]

**\*10** "The bare fact that [an official] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon,* 58 F.3d at 874; *see also Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (explaining

that sustaining a Section 1983 claim "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply"). "Even where there has been a constitutional violation, receipt of letters or grievances is insufficient to impute personal involvement." *Dilworth v. Goldberg,* No. 10 Civ. 2224(RJH)(GWG), 2011 WL 3501869, at *19 (S.D.N.Y. July 28, 2011) (citation, alteration, and quotation marks omitted), *report and recommendation adopted,* 2011 WL 4526555 (S.D.N.Y. Sept 30, 2011). Further, "[t]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Vann,* 2014 WL 4188077, at *7 (citation omitted). "Nor is a supervisor liable under [Section] 1983 when she receives a letter and forwards it to the appropriate staff personnel to handle, but takes no other action." *Id.; see also Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.2007) (affirming dismissal for failure to allege personal involvement where defendant referred one letter and responded to the next by informing plaintiff that a decision had been rendered). Additionally, after *Iqbal,* under both Section 1983 and RLUIPA, "an official's denial of a grievance alleging a constitutional deprivation, without more, does not amount to personal involvement in the deprivation of that right." *Joseph v. Fischer,* No. 08 Civ. 2824(PKC)(AJP), 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009). "Only where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint) can the supervisor be held personally involved for [Section] 1983 purposes." *Vann,* 2014 WL 4188077, at *7 (internal quotation marks omitted). As Defendants argue, Plaintiff has not met the burden of pleading personal involvement for any of the 12 individual Defendants.

### i. Dr. Adams, C.O. Hayes, and Sgt. Hutti

With regards to Dr. Adams, C.O. Hayes, and Sgt. Hutti, Plaintiff simply does not allege any involvement in, or even awareness of, his purported religious deprivations. Accordingly, to the extent that Plaintiff's complaint makes religious deprivation claims against Dr. Adams, C.O. Hayes, and Sgt. Hutti, those claims are dismissed.

### ii. Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico

Plaintiff alleges that Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico violated RLUIPA and the Free Exercise Clause by failing

to hire a Hindu chaplain and failing to provide him with a special Hindu diet. (Compl.5–6). As Defendants point out (Def.Br.6–7), Plaintiff does nothing more in his Complaint than name these individuals, reference their job titles, make conclusory allegations that they failed to provide him a Hindu chaplain and diet, and attach letters he sent them complaining about the lack of a Hindu chaplain. (*See* Compl. 5–6, 22; Dkt. # 2–2 at 22–24). Receipt by these officials of letters of complaint, even if true, is simply not enough to establish personal involvement. *See Dilworth,* 2011 WL 3501869, at *19.[9] Plaintiff's claims against these Defendants are apparently predicated entirely upon their positions of authority within New York State. Accordingly, Plaintiff's religious deprivation claims against Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico are dismissed.

### iii. Superintendents Perez, Rock, Racette, Graham, LaValley, and Director Morris

**\*11** Plaintiff also alleges that Superintendents Perez, Rock, Racette, Graham, LaValley, and Director Morris violated RLUIPA and the Free Exercise Clause by failing to hire a Hindu chaplain and failing to provide him with a special Hindu diet. (Compl.5–6). As with the other Defendants, Plaintiff does not include any specific factual allegations against these Defendants; he simply provides their names and titles and alleges they failed to hire a Hindu chaplain or provide him with a special diet. Claiming that these individuals are in the chain-of-command in the prison hierarchy is not enough to allege personal involvement. *See Colon,* 58 F.3d at 874. Plaintiff further attaches letters and grievance determinations to the Complaint; these attachments purport to demonstrate that these Defendants were copied on correspondence complaining about the lack of Hindu chaplain or that they reviewed Plaintiff's grievances. Significantly, however, alleging that these Defendants received and reviewed letters and grievances, or even that they denied the relief sought in grievances, is not enough to plead their personal involvement. Accordingly, Plaintiff's religious deprivation claims against Superintendents Perez, Rock, Racette, Graham, LaValley, and Director Morris are dismissed.

### d. Plaintiff Has Failed to State a Claim for Religious Deprivation

Plaintiff's Complaint is dismissed solely on the ground that he has failed to allege any personal involvement by

Defendants. However, because Plaintiff is *pro se,* because his claims are dismissed without prejudice (except where specified), and because Plaintiff's claims as-pleaded are wholly inadequate, the Court will address the substance of Plaintiff's religious deprivation claims as well. Plaintiff does not adequately allege any facts that demonstrate that his ability to practice his religion has been unlawfully burdened by the failure of DOCCS to hire a Hindu chaplain or provide him a special religious diet.

### i. Plaintiff's Claims Regarding the Failure to Hire a Hindu Chaplain Are Deficient

Plaintiff's claims regarding religious discrimination are vague and conclusory. Plaintiff simply repeats in his Complaint that his "freedom of religion" has been "violated," that he has been subject to "religious discrimination," that there have been "important Holy Days and Rituals that [he] could not properly observe" due to religious discrimination, that Defendants have "disregard[ed][his] religious needs [and] religious rites," and that they have failed "to accommodate [him] religiously." (Compl.5–6). Plaintiff's opposition to Defendants' pre-motion letter is no better, incanting repeatedly the legal conclusion that his practice of religion has been substantially burdened. (Pl.Opp.1–2, 4).

The operative Complaint does not allege any facts that "nudge [Plaintiff's] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.,* 502 F.3d at 50. Plaintiff makes no showing regarding how contact with Hindu advisors is "central or important" to the practice of his faith, necessary to sustain a Free Exercise claim. *Rossi v. Fischer,* No. 13 Civ. 3167(PKC)(DF), 2015 WL 769551, at *10 (S.D.N.Y. Feb. 24, 2015) (dismissing free exercise claim based on lack of access to advisors). Nor does he explain how not having a Hindu advisor impermissibly burdens his practice of his religion. He claims his religious "needs" and "rites" have been disregarded, and that he has not been able to "properly" observe religious holidays. (Compl.6). But Plaintiff does not identify any specific needs, rites, or holidays; nor does he allege the facts of any occasion when any Defendant has actually interfered with the practice of his religion. Plaintiff simply complains that it is "religious discrimination" that DOCCS "provide[s] chaplains for Muslims, Jews, Catholics, Christians, Protestant[s], [and] Nation of Islam," but not for his religion, "which is an equally large religion." (Compl.6). These conclusory

allegations are not enough to state a claim under the First Amendment or RLUIPA. [10]

### ii. Plaintiff's Claims Regarding the Failure to Provide a Special Religious Diet Are Deficient

**\*12**  Plaintiff also fails to state a claim as it concerns his diet. It is true that it has long been established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975); *see also McEachin,* 357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."). But Plaintiff again only makes conclusory allegations: he claims that the food that DOCCS provides is "not in accordance with my religious beliefs and religious diet," and that they have failed to accommodate his "dietary needs in accordance with [his] religion." (Compl.5–6). Plaintiff's opposition to Defendants' pre-motion letter does not fill in any detail; it simply claims, "For all food served in messhall, as well as[ ] sold in commissary, doesn't comply nor fall within the criteria for practicing Hinduism. Therefore, Plaintiff is forced to eat food that goes against his religious diet and belief." (Pl.Opp.2). Plaintiff does not allege what a Hindu diet is, or identify how the meals he is provided are not compatible with that diet.

Moreover, during the July 29, 2014 conference, Plaintiff suggested that his discontent with his prison diet stemmed not from the dictates of his religion, but from the fact that in accommodating his religious diet the facility often substituted animal proteins with soy protein, which is something Plaintiff does not personally eat. (July 29, 2014 Tr. 11–12). The Court cautions Plaintiff that DOCCS is under no obligation to accommodate his personal dietary preferences; it only must accommodate diets dictated by his practice of his religion. *See Kahane,* 527 F.2d at 496 (holding that a prison was required to provide an orthodox Jewish rabbi with a diet that maintained his good health and did not violate Jewish dietary laws, but refusing to mandate any specific food item or method for fulfilling this order, as "[s]uch details are best left to the prison's management which can provide from the food supplies available within budgetary limitations"); *see also Rossi,* 2015 WL 769551, at \*9 (finding plaintiff did not plausibly allege Free Exercise Clause claim where he

did not allege that holy day meals were inconsistent with religious beliefs or explain how adding certain items to the meals was "central or important" to his religion).

### D. Plaintiff's Retaliation Claims Are Dismissed

Finally, Plaintiff alleges that Defendants retaliated against him for filing grievances by denying him needed medical care and otherwise subjecting him to "harassment, threats, [and] retaliation ." (Compl.9). To establish a First Amendment claim of retaliation, a plaintiff must show: "[i] that the speech or conduct at issue was protected, [ii] that the defendant took adverse action against the plaintiff, and [iii] that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (citation omitted). In the prison context, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie,* 692 F.3d 22, 31 (2d Cir.2012) (citation omitted). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (citation omitted); *see also Wrobel,* 692 F.3d at 31.

**\*13**  When considering a prisoner's retaliation claims, the court must bear in mind that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Davis,* 320 F.3d at 353 (citation omitted). Since it is "near[ly] inevitabl[e]" that "prisoners will take exception" with the decisions of prison officials, and given "the ease with which claims of retaliation may be fabricated," the Second Circuit has cautioned that prisoners' retaliation claims must be "examin[ed] ... with skepticism and particular care." *Colon,* 58 F.3d at 872; *see also Davis,* 320 F.3d at 352. "To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000) (citation omitted).

Although Plaintiff has satisfied the first prong of a retaliation claim—the First Amendment protects prisoners from retaliation for the filing of grievances and lawsuits, *Davis,* 320 F.3d at 352–53—his claims are stated in "wholly conclusory terms," *Friedl,* 210 F.3d at 86, and must be dismissed. With regards to "all defendants," Plaintiff alleges they violated his rights "in many ways as to harassment, threats, retaliation, false misbehavior

reports, messing with legal mail and reg[ular] mail, moving around from one floor to other then moving me from facility to facility creating undue hardship as well as to my family and love[d] ones too with all the games by these defendants." (Compl.9). As Defendants argue (Def.Br.13), this claim must be dismissed because even under the most liberal reading of the Complaint, Plaintiff's allegations are wholly conclusory and lacking in facts sufficient to connect each Defendant to a retaliatory action. *See Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (dismissing complaint where plaintiff named defendants in caption but body of complaint contained no allegations explaining how defendants violated the law or injured plaintiff), *aff'd sub nom. Dove v. O'Hare,* 210 F.3d 354 (2d Cir.2000); *see also Kasiem v. Rivera,* No. 09 Civ. 9665(DLC), 2011 WL 166929, at *6 (S.D.N.Y. Jan. 18, 2011) (dismissing as too conclusory allegations that defendants made false reports and made death threats "solely on the basis of retaliatory reprisal").

In alleging his retaliation claims, Plaintiff does specifically name Defendants Dr. Adams, C.O. Hayes, Sgt. Hutti, and Superintendent LaValley. (Compl.8). Even so, Plaintiff's allegations against these Defendants are far too conclusory to state a claim. He alleges they retaliated by issuing him two "false tickets" and engaging in the "biggest set up" to have him transferred from the Clinton Correctional Facility. (*Id.*). Plaintiff does not specify who issued these "false tickets" or which grievances these allegedly retaliatory actions were in response to; he does not state what acts each of these Defendants took in retaliation; and he does not establish any time frame that

might permit an inference of a causal connection. *See Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001) (finding that failure to set forth a time frame for the alleged events precludes inference of a causal relationship for purposes of retaliation claim), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002). Plaintiff has not pleaded enough facts to state a claim for retaliation. His retaliation claims are therefore dismissed without prejudice.

## CONCLUSION

**\*14** For the foregoing reasons, the Complaint is dismissed in its entirety. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

Should Plaintiff wish to attempt to re-plead those claims that were dismissed without prejudice, he may submit an amended complaint in accordance with this Opinion on or before **August 10, 2015,** and this case will be reopened. Plaintiff is cautioned that if submits an amended complaint that does not address—and rectify—the deficiencies discussed in this Opinion, some or all of his claims may be dismissed with prejudice.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 3604242

Footnotes

1   The facts alleged herein are drawn from Plaintiff's Complaint ("Compl." (Dkt.# 2)), and are assumed true for the purposes of this Opinion. Citations to the Complaint are made using the page-numbering convention imposed by this Court's electronic case filing ("ECF") system. Plaintiff attached a large volume of documents to his Complaint, and it was therefore docketed as 12 separate PDFs. To the extent this Opinion cites documents contained within the first PDF (Dkt.# 2), those will be referenced as "Compl. [page number]." To the extent this Opinion cites documents contained in the other 11 PDFs, docket entries 2–1 to 2–11, those will be referenced as "Dkt. # 2–1 at [page number]," and so on. Defendants' memorandum of law in support of their motion to dismiss (Dkt.# 71) will be referred to as "Def. Br." As discussed further below, Plaintiff's opposition to Defendants' pre-motion letter (Dkt.# 46) will be referred to as "Pl. Opp."; Plaintiff did not submit any formal opposition to Defendants' motion.

2   Plaintiff has moved between facilities several times. Discerning the exact timeline of Plaintiff's facility moves is not necessary to the resolution of the instant motion.

3   Given that Plaintiff styled his Complaint as based entirely on Section 1983, and only referenced the ADA in a single line, the Court did not at that time construe Plaintiff to have brought valid claims under any statutes under which Congress had abrogated the states' immunity. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir.1977) (finding that Congress has not abrogated the states' Eleventh Amendment immunity under Section 1983); *cf. United*

Case 9:16-cv-01129-GTS-TWD    Document 91    Filed 01/24/18    Page 38 of 59
Ramrattan v. Fischer, Not Reported in F.Supp.3d (2015)
2015 WL 3604242

*States v. Georgia,* 546 U.S. 151, 159 (2006) (establishing three-part process for determining whether Congress had validly abrogated a state's immunity from suit for certain ADA claims).

4    The Court takes notice that the classification of "HL 30" means the inmate has "non-significant hearing loss" under the Directive, but may nonetheless be entitled to some accommodations. *See, e.g., Rosales v. LaValley,* No. 11 Civ. 106(MAD)(CFH), 2012 WL 7688115, at *1 (N.D.N.Y. Nov. 2, 2012) (discussing and quoting text of Directive # 2612), *report and recommendation adopted in part, rejected in part,* 2013 WL 992547 (N.D.N.Y. Mar. 13, 2013).

5    In this regard, the Court cautions Plaintiff that false or frivolous claims will be dismissed. In particular, Plaintiff's allegations that he cannot use a telephone strain credulity where he has participated in a telephone conference with the Court unaided, and heard and responded to everything the Court said. (*See generally* July 29, 2015 Tr.).

6    "It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.' " *Holland v. Goord,* 758 F.3d 215, 220 (2d Cir.2014) (quoting *Salahuddin v. Goord,* 467 F.3d at 27475). However, because here the Court finds that Plaintiff has not pleaded sufficient facts to allege the personal involvement of any Defendants or to establish any burden on his religious beliefs, the Court need not grapple with the weight of the burden at this time.

7    Although Defendants do not make this argument, it is also possible that Plaintiff's RLUIPA claims for injunctive relief should be dismissed as moot. In this Circuit, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord,* 467 F.3d at 272; *see also Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (per curiam) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."). Plaintiff is currently incarcerated at Attica Correctional Facility, and all Defendants are employed elsewhere, potentially rendering his claims moot. Certain decisions in this District have allowed claims for injunctive relief against prison officials to proceed despite an inmate's transfer from the facility in question, under the theory that such claims may be "capable of repetition, yet evading review." *Pugh,* 571 F.Supp.2d at 489. However, the Court's determination that Plaintiff has not adequately pleaded a claim means that it will not consider the mootness issue at this time.

8    Courts have disagreed as to whether the five *Colon* factors continue to apply after *Iqbal. See generally McNaughton v. de Blasio,* No. 14 Civ. 221(KPF), 2015 WL 468890, at *5 n. 8 (S.D.N.Y. Feb. 4, 2015) (collecting cases). Any such uncertainty, however, does not alter settled law that "[t]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under [Section] 1983." *Styles v. Goord,* 431 F. App'x 31, 33 (2d Cir.2011) (summary order) (collecting cases).

9    At least one letter attached to the Complaint indicates that former Commissioner Fischer referred Plaintiff's letter to the appropriate official for handling. (*See, e.g.,* Dkt. # 2–2 at 18). Referring an inmate's complaint to the appropriate staff is not enough to establish personal involvement. *See Vann,* 2014 WL 4188077, at *7.

10    Determining whether a challenged policy is reasonably related to a legitimate penological interest is a fact-laden inquiry that is generally ill-suited for resolution on a motion to dismiss. *See Ford,* 352 F.3d at 596 (declining to determine whether defendants' conduct was reasonably related to legitimate penological interests on motion to dismiss because "the record [was] insufficient to resolve this fact—and context—specific dispute"). On this motion to dismiss, the Court declines to assess whether there is a "valid, rational connection" between Defendants' actions and their purported concerns. *See Turner,* 482 U.S. at 89.

The Court notes, however, that Defendants advance strong arguments based on the record in this case, which is more voluminous than is typical on a motion to dismiss due to the number of documents Plaintiff attached to his Complaint. (Def.Br.11). Specifically, as Defendants argue, letters Plaintiff attached to his complaint strongly support that because so few inmates are Hindu—comprising less than one percent of the DOCCS prison population—it was not fiscally justifiable to employ a Hindu chaplain on staff. (*See* Dkt. # 2–2 at 18, # 2–11 at 13). The Court may revisit Defendants' arguments if further motion practice ensues.

---

**End of Document**                                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4349381
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John Willis RICHARD, Plaintiff,
v.
Lucien J. LECLAIRE, et al., Defendants.

9:15-CV-00006 (BKS/TWD)
|
Signed 09/29/2017

**Attorneys and Law Firms**

John Willis Richard, 91-A-0169, Eastern NY Correctional
Facility, Box 338, Napanoch, New York 12458, pro se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Ryan W. Hickey, Esq., Assistant
Attorney General, The Capitol, Albany, New York 12224,
Counsel for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Court
Judge

**I. Introduction**

*1 Plaintiff pro se John Willis Richard brought
this action under 42 U.S.C. §§ 1983, 1985(3), and
1986 against Defendants Lucien J. Leclaire, Deputy
Commissioner of the Department of Correctional
Services and Community Supervision ("DOCCS") in
the State of New York; Captain Timothy McCarthy,
Auburn Correctional Facility ("Auburn"); Lieutenant
Daniel Oleksiw, Auburn; Lieutenant Michael P. Brown,
Auburn; Lieutenant Burns, Auburn; Sergeant Anthony
P. Volpe, Auburn; Corrections Officer ("C.O.") Gary
C. Gibson, Auburn; C.O. Michael Woodard, Auburn;
Lieutenant Wayne Jordan, Sullivan Correctional Facility
("Sullivan"); Lieutenant Garry Sipple, Sullivan; Dennis
Giglio, Deputy Superintendent of Security, Sullivan
Correctional Facility; C.O. Joseph Daddezio, Sullivan;
Sergeant Paul Mace, Sullivan; and C.O. Jeremy McGaw,
Upstate Correctional Facility ("Upstate"). (Dkt. Nos. 1,
46, 52, 53).[1]

The Complaint alleges, *inter alia*, that Defendants took
action in violation of Plaintiff's constitutionally protected
rights in response to his refusal to remove designs shaved
into his beard. (Dkt. No. 1). By Decision and Order
filed October 22, 2015, the Court granted Plaintiff's in
forma pauperis application, dismissed certain claims and
defendants, and found that the remaining claims survived
a *sua sponte* review and required a response. (Dkt.
No. 10). The claims remaining after initial review are:
(1) Fourteenth Amendment due process claims against
Defendants Brown, Jordan, and Giglio, arising out of
disciplinary hearings and appeals; (2) First Amendment
retaliation claims against Defendants Gibson, Volpe,
Woodard, McCarthy, Burns, and Brown involving the
issuance of a false inmate misbehavior report ("IMR")
and the rigging of the disciplinary hearing on the IMR;
(3) a Fourteenth Amendment due process vagueness claim
against Leclaire regarding DOCCS Directive 4914; (4)
Fourteenth Amendment equal protection claims against
Defendants Gibson, Volpe, Woodard, Burns, McCarthy,
Brown, McGaw, Jordan, Daddezio, Sipple, Mace, and
Giglio; and (5) various conspiracy claims against Gibson,
Volpe, Woodard, Burns, McCarthy, Oleksiw, Brown,
Jordan, Sipple, Daddezio, Mace, and Giglio. (Dkt. No. 10
at 39).

On November 15, 2016, eleven of the Defendants moved
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the
grounds that (i) Plaintiff's claims are barred, in part,
by the statute of limitations; (ii) Plaintiff fails to state
a procedural due process claim because he contested
disciplinary hearings and did not identify a protected
liberty interest; and (iii) Plaintiff fails to state a conspiracy
claim and, in the alternative, that any conspiracy claims
are barred by the intracorporate conspiracy doctrine.
(Dkt. No. 46-1).

This matter was referred to United States Magistrate
Judge Thérèse Wiley Dancks who, on July 10, 2017,
issued an Order and Report-Recommendation ("R &
R") recommending that Defendant's motion to dismiss
be granted on the basis that several of Plaintiff's claims
are barred by the statute of limitations—specifically,
Plaintiff's (1) Fourteenth Amendment procedural due
process claims against Brown; (2) First Amendment
retaliation claim against Defendants Gibson, Volpe,
Woodard, McCarthy, and Brown [2]; (3) Fourteenth
Amendment equal protection claim against Defendants

Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; and (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown. (Dkt. No. 61 at 39).[3] The R & R recommends that Plaintiff's Fourteenth Amendment due process claim against Defendant Jordan be dismissed on the ground that Plaintiff fails to adequately state a claim for violation of his procedural due process rights. (*Id.* at 35). Finally, the R & R recommends that Plaintiff's conspiracy claims be dismissed under the intracorporate conspiracy doctrine, to the extent that the conspiracy claims against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are not also barred by the statute of limitations. (*Id.* at 38).

**\*2** Plaintiff filed an 83-page objection to the Report-Recommendation on September 14, 2017. (Dkt. No. 66). Plaintiff's primary objections are that the R & R: (i) improperly determined that his claims are barred by the statute of limitations, because the fraudulent concealment doctrine renders all of his claims timely (*id.* at 2); (ii) inappropriately applied "employment discrimination Title VII laws of a continuating [sic] violation doctrine to a prison setting" (*id.* at 26); (iii) improperly "denied [him] the benefits of res judicata and collateral estoppel on the merits founded [sic] in the complaint" (*id.* at 29); (iv) improperly applied the intracorporate conspiracy doctrine in determining that some of his claims are time-barred; and (v) failed to consider his requests for certification of interlocutory appellate review of three issues (*id.* at 26, 77–78, 79). Further, Plaintiff argues that he should be permitted to amend his complaint to state a new claim for First Amendment retaliation due to the fact that Magistrate Judge Dancks took judicial notice of the 2013 revision to Directive 4914. (*Id.* at 58–72).

For the reasons set forth below, the R & R is adopted in its entirety.

## II. Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F.Supp.3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Findings and recommendations as

to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III. Discussion

### A. Fraudulent Concealment Doctrine

Plaintiff objects to the R & R on the basis that the Magistrate Judge failed to consider Plaintiff's argument that the doctrine of fraudulent concealment "makes all claims in suit timely." (Dkt. No. 66 at 2).

"[T]he doctrine of fraudulent concealment prevents a party from fraudulently concealing wrongdoing until after the tolling of the statute of limitations." *Aiken v. Nixon*, 236 F.Supp.2d 211, 240 (N.D.N.Y. 2002). "To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by defendants [of their actions] (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F.Supp.2d 268, 278 (S.D.N.Y.2013). "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).

The claims for which the R & R recommends dismissal on the basis of the statute of limitations are all grounded in the issuance of Inmate Misbehavior Reports ("IMRs"), and the subsequent adjudication and administrative approval of disciplinary actions. (*See* Dkt. No. 1, ¶¶ 87, 89, 93, 101, 192–198, 221–24, 226–228, 288; Dkt. No. 1-2 at 7, 15, 19–27, 33, 35, 41–45, 47, 62, 72–76, 109, 111, 114–44). Plaintiff does not allege that Defendants undertook any disciplinary actions, which constitute the basis of the alleged harms against him, in secret or without his knowledge. Nor does he allege that Defendants successfully conspired to mislead Plaintiff into believing that he did not have a cause of action, or that he was otherwise not on notice of a potential claim after an IMR was issued or the disciplinary hearing occurred. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("To take advantage of [the] doctrine [of fraudulent concealment], however, a plaintiff

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

must submit non-conclusory evidence of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered.*"); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (fraudulent concealment tolls the statute of limitations only where plaintiff "remained in ignorance of [his] cause of action"). Indeed, Plaintiff acknowledges that he was contemporaneously aware of each IMR, disciplinary hearing, or administrative approval that allegedly constituted a violation of his rights. (*See* Dkt. No. 1 at ¶¶ 87, 89, 93, 101, 192–98, 221–24, 226–28, 288). The doctrine of fraudulent concealment is therefore inapplicable.

**\*3** After reviewing this issue *de novo*, the Court agrees with Magistrate Judge Dancks' determination that Plaintiff's (1) Fourteenth Amendment procedural due process claims against Brown; (2) First Amendment retaliation claim against Defendants Gibson, Volpe, Woodard, McCarthy, and Brown; (3) Fourteenth Amendment equal protection claim against Defendants Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; and (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are barred by the statute of limitations.

### B. Continuing Violation Doctrine

Plaintiff objects to the R & R on the basis that it improperly applies "employment discrimination Title VII laws of a continuating [sic] violation doctrine to a prison setting" in determining that Plaintiff's Fourteenth Amendment equal protection claims are barred by the statute of limitations. (Dkt. No. 66 at 26–28).

"Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). "[T]he continuing-violation doctrine has been applied, both by the Second Circuit and by courts in other jurisdictions, to a variety of non-Title VII claims," including Eighth Amendment deliberate indifference and racial discrimination claims and claims brought under § 1983 in a prison context. *Remigio v. Kelly*, No. 04-cv-1877, 2005 WL 1950138, at \*7, 2005 U.S. Dist. LEXIS 16789, at \*22 (S.D.N.Y. Aug. 2,

2005); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (Eighth Amendment deliberate indifference claim); *Washington*, 373 F.3d at 317 (racial discrimination claim under § 1983). The Second Circuit has generally reasoned by analogy to Title VII cases when applying the continuing violation doctrine to circumstances other than employment discrimination cases. *See Washington*, 373 F.3d at 317 (conducting continuing violation analysis of § 1983 claim, but finding that doctrine did not toll the statute of limitations because claims accrued when defendant undertook discrete act of initiating disciplinary proceeding). Regardless of the context, however, "federal courts look unfavorably on continuing violation arguments, and have applied the theory only under 'compelling circumstances,' such as where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred." *Yip v. Bd. of Trs.*, No. 03-CV-00959C (SR), 2004 WL 2202594, at \*4, 2004 U.S. Dist. LEXIS 28366, at \*14 (W.D.N.Y. Sep. 29, 2004).

Here, Plaintiff has alleged discriminatory actions by Defendants Gibson, Volpe, Woodard, McCarthy, and Brown specifically in connection with the January 28, 2011 IMR and subsequent disciplinary proceedings. (Dkt. No. 1-2 at 41). Similarly, Plaintiff alleges that Defendant McGaw discriminatorily filed an IMR against him at Upstate for refusing McGaw's direct order to remove the design shaved into Plaintiff's beard. (*Id.* at 111–12). Both allegations describe conduct that is "discrete in its nature" and "wholly separable" from other allegations of discrimination. *Washington*, 373 F.3d at 319. In other words, Plaintiff's allegations do not describe "a continuous or ongoing policy or practice" of discrimination necessary to demonstrate the kind of compelling circumstances that justify tolling of the statute of limitations by the continuing violation doctrine. *Id.* "That the continuing violation doctrine can apply ... does not mean it must." *Shomo*, 579 F.3d at 182.

**\*4** After reviewing this issue *de novo*, the Court concludes that Magistrate Judge Dancks properly considered the continuing violation doctrine and agrees with Magistrate Judge Dancks' determination that it does not render Plaintiff's claims timely and that Plaintiff's Fourteenth Amendment equal protection claims against Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw should be dismissed.

#### C. Collateral Estoppel

Plaintiff seems to object to the R & R on the basis that it fails to consider that, because prior prison disciplinary proceedings determined that his beard was in compliance with Directive 4914, Defendants should be estopped from "making any motion in its defense or affirmative defense like the motion to dismiss 12(b)(6) as to the present motion on any litigation grounds for that matter." (Dkt. No. 66 at 34). Plaintiff's objections are meritless.

In order for a plaintiff to "bar a defendant from litigating an issue on collateral estoppel grounds: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 37 (2d Cir. 2005). Assuming, *arguendo*, that the doctrine of collateral estoppel may apply to prison disciplinary proceedings,[4] none of the issues raised by Plaintiff's claims for First Amendment retaliation, Fourteenth Amendment due process violations, Fourteenth Amendment equal protection violations, and conspiracy to deprive Plaintiff of his constitutionally protected rights were addressed or determined in his prison disciplinary proceeding. The doctrine of collateral estoppel is therefore inapplicable.

#### D. Intracorporate Conspiracy Doctrine

Plaintiff objects to the R & R's application of the "intracorporate conspiracy doctrine in a prison context" as it is "strictly a business ... doctrine." (Dkt. No. 66 at 80). Plaintiff argues that the R & R "uses the intracorporate conspiracy doctrine to evade Plaintiff's claims against Defendants to favor them in the face of prior Northern District rejections of the doctrine in a prison setting." (*Id.*). The cases Plaintiff offers in support, however, acknowledge the appropriateness of applying the doctrine in a prison setting. *See, e.g., Benitez v. Hamm*, No. 9:04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *18–19, 2009 U.S. Dist. LEXIS 97495, at *68–71 (N.D.N.Y. Sept. 30, 2009) (Lowe, Mag. J.) ("I will assume that the [intracorporate conspiracy] doctrine applies in § 1983 cases."); *Orafan v. Goord*, 411 F.Supp.2d 153, 164-65 (N.D.N.Y. 2006) (Magnuson, J.) ("The intracorporate conspiracy doctrine applies to individual

defendants of a correctional institution."), *vacated and remanded on other grounds sub nom. Orafan v. Rashid*, 249 Fed.Appx. 217 (2d Cir. 2007); *Medina v. Hunt*, No. 9:05-CV-1460 (DNH/GHL), 2008 WL 4426748, at *8, 2008 U.S. Dist. LEXIS 120759, at *54 (N.D.N.Y. Sep. 2, 2008) (Lowe, Mag. J.) (applying intracorporate conspiracy doctrine analysis to prison context). Further, in each of these cases, the defendants were alleged to have been "pursuing personal interests wholly separate and apart from the entity." *Orafan*, 411 F.Supp.2d at 165 (citation and internal quotation marks omitted). In such situations, the intracorporate conspiracy doctrine does not bar conspiracy claims, and defendants may be found liable for their conduct. *Id.*

**\*5** Plaintiff has failed to allege any nonconclusory facts that raise a plausible claim that Defendants at either Auburn or Sullivan were pursuing interests that were wholly separate from DOCCS and their employment by DOCCS. Having reviewed this issue *de novo*, the Court agrees with Magistrate Judge Dancks' recommendation that Plaintiff's conspiracy claims should be dismissed under the intracorporate conspiracy doctrine, to the extent that the claims against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown are not already time-barred by the statute of limitations as discussed in Section III.A, *supra*. *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming dismissal of § 1985 claim against police officers, police department, and the village under intracorporate conspiracy doctrine).

#### E. Request for Certification of Interlocutory Appeal

Plaintiff objects to the R & R on the basis that it fails to consider his request to certify an order to the Second Circuit Court of Appeals so that he may obtain a decision relating to application of the continuing violation and intracorporate conspiracy doctrines to his case. (Dkt. No. 66 at 26, 79).

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where "such order involves a controlling question of law as to where there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "[L]eave to appeal from interlocutory orders should be granted only in exceptional circumstances [that] ... overcome the general aversion to piecemeal litigation and justify departing from the

basic policy of postponing appellate review until after the entry of final judgment." *Picard v. Estate of Madoff*, 464 B.R. 578, 582–83 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). "Interlocutory appeals are strongly disfavored in federal practice. Movants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases. Only exceptional circumstances will justify a departure from the basic policy of avoiding appellate review until a final decision on the merits." *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *2, 2013 U.S. Dist. LEXIS 139594, at *3 (S.D.N.Y. Sept. 17, 2013) (quoting *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F.Supp.2d 241, 282 (S.D.N.Y. 2010)).

Plaintiff fails to demonstrate any "controlling question of law as to where there is substantial ground for difference of opinion." There are no "exceptional circumstances" that warrant certification of an order for interlocutory appeal, and Plaintiff's request is accordingly denied.

### F. New Claim for First Amendment Retaliation

Plaintiff asserts that, because Magistrate Judge Dancks's took judicial notice in the R & R that Directive 4914 was amended to prohibit beard "[p]atterns, designs, or braids" on March 1, 2013 (Dkt. No. 61 at 4 n.4), he is entitled to assert a new claim that Defendants retaliated against him by "informing 'DOCS/Albany' about the beard designs" in violation of his First Amendment rights. (Dkt. No. 66 at 58). This is not an objection to the R & R. In any event, Plaintiff's arguments are meritless.

To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "In order to establish a causal connection at the pleading stage, the 'allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.' " *Morey v. Somers Cent. Sch. Dist.*, 2007 WL 867203, at *11, 2007 U.S. Dist. LEXIS 20265, at *36 (S.D.N.Y. Mar. 21, 2007) (quoting *David v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). In determining whether circumstantial facts indicate that a

"causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F.Supp.2d 723, 732–33 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*6** Plaintiff alleges that Defendants at Sullivan, motivated by Plaintiff's grievances related to his refusal to shave designs out of his beard, "retaliated by informing 'DOCS/Albany' about the beard designs" and that their action resulted in the March 1, 2013 amendment to Directive 4914. (Dkt. No. 66 at 63). Grievances are protected conduct under the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding that the plaintiff "has sufficiently alleged ... participation in protected activity: the use of the prison grievance system"). Plaintiff alleges that he suffered an adverse action when DOCCS amended Directive 4914 in March 2013. (Dkt. No. 66 at 64). Plaintiff asserts that there is a causal connection between his grievances and the amendment of Directive 4914, arguing: "How else would the dir. 4914 change/be 'amended' to include bar to beard designs if [Defendants] did not report it to Albany/DOCS?" (*Id.* at 64). Even assuming that this Directive could constitute an adverse action, the amendment of a DOCCS directive more than a year after the last protected conduct fails to allege a causal connection between the protected conduct and the Directive. Indeed, there are no allegations that allow a plausible inference that any particular Defendant actually urged the amendment of Directive 4914 following Plaintiff's grievances.

### IV. Conclusion

Accordingly, it is hereby

**ORDERED** that the Report and Recommendation (Dkt. No. 61) is **ADOPTED** in its entirety for the reasons stated therein; and it is further

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 46) pursuant to Rule 12(b)(6) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the motion to dismiss is granted as to and that the following claims are **DISMISSED WITH PREJUDICE**: (1) Fourteenth Amendment procedural due process claims against Defendants Brown and Jordan; (2) First Amendment retaliation claim against Defendants Gibson, Volpe, Woodard, McCarthy, and Brown; (3) Fourteenth Amendment equal protection claim against Defendants Gibson, Volpe, Woodard, McCarthy, Brown, and McGaw; (4) conspiracy claim against Defendants Gibson, Volpe, Woodard, McCarthy, Oleksiw, and Brown under §§ 1983, 1985(3), and 1986; and (5) conspiracy claim against Defendants Jordan, Mace, Daddezio, and Sipple brought under §§ 1983, 1985(3), and 1986; and it is further

**ORDERED** that the motion to dismiss is **DENIED** as to the Fourteenth Amendment due process vagueness claim against Defendant Leclaire; [5] and it is hereby

**ORDERED** that Defendants Brown, Gibson, Volpe, Woodard, McCarthy, McGaw, Oleksiw be **DISMISSED** from this action; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on the plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 4349381

Footnotes

1   The summonses were returned unexecuted as to Defendants Burns and Giglio. (Dkt. No. 37). There has been no appearance by these defendants; they are not parties to the motion to dismiss. (Dkt. No. 46).

2   The R & R inadvertently refers to Defendant Brown as "Brooks" in two instances, but otherwise correctly refers to him as Defendant Brown. (Dkt. No. 61 at 32–33).

3   As the R & R notes, "summonses were returned unexecuted as to Defendants Burns and Giglio. There has been no appearance on behalf of Burns and Giglio, and they are not parties to the motion to dismiss." (Dkt. No. 10 at 2 n.1 (internal citations omitted)).

4   *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (noting that "there is a substantial question as to whether, under New York Law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the 'procedural laxity' of such prison hearings and the limited nature of substantial-evidence review").

5   Plaintiff's equal protection claim against Defendants Jordan, Sipple, Daddezio, Mace, and Giglio remains.

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, David L. Cochran, Esq., of Counsel, New
York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant to
42 U.S.C. § 1983, was referred to the Hon. George H.
Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically,
Judge Lowe recommended that Plaintiff's Fourteenth
Amendment procedural due process claim against
Defendant Varkiar regarding his disciplinary hearing
be dismissed if, within thirty (30) days from the
filing of this Final Order, Plaintiff does not file
an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim.
It was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de
novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such a
review, the Court may "accept, reject, or modify, in whole
or in part, the findings or recommendations made by
the magistrate judge. The judge may also receive further
evidence or recommit the matter to the magistrate judge
with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation
of Magistrate Judge Lowe for the reasons stated in the
Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me
by the Honorable Thomas J. McAvoy, Senior United
States District Judge, for Report and Recommendation
with regard to any dispositive motions filed, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally,
in his Complaint, Raymond Robles ("Plaintiff") alleges
that three employees of the New York State Department
of Correctional Services ("DOCS"), as well as DOCS
itself, violated his rights under the Eighth and Fourteenth
Amendments when they (1) required him to submit to
a random urinalysis test when they knew he was taking
a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished
him with eighty-seven days in a Special Housing Unit for
refusing to provide a urine sample. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Currently pending before the Court is

Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom

at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.;[12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U.");[13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample;[14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's

own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

### II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

2008 WL 4693153

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of

course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

#### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

#### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending

the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal)[56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety.[57] Here, Plaintiff himself alleges that the

three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation.[58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

### D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ).[61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

### E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his

medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural

due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* in part and *DENIED* in part in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,*

2008 WL 4693153

984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1     *See, infra,* note 41 of this Report-Recommendation (citing cases).

2     (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4     (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8     (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9     (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the plaintiff is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary

affirmances because "they clearly acknowledge the continued precedential effect" of *Dimond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

**34**   The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

**35**   *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

**36**   *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

**37**   For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g ., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

**38**   *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

**39**   *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**40**   *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted];

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
Case 9:16-cv-01129-GTS-TWD    Document 91    Filed 01/24/18    Page 56 of 59
2008 WL 4693153

*McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe,

M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to

urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59   *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60   *See, supra,* note 44 of this Report-Recommendation.

61   *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62   *See, supra,* note 44 of this Report-Recommendation.

63   *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64   *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See* *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*") (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States.*") [emphasis added].

66    *See* *Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See* *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See* *Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**                                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.